UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
RAMON VALENCIA, on behalf of himself and all :
others similarly situated, :
                                                    Plaintiff, :
                          -against- :          **21 Civ. 00448 (PK)**
:
LIVE LION SECURITY LLC, BENJAMIN MEHREL, :
and JOSEPH JACOBOWITZ, :
:
                                  Defendants. :
------------------------------------------------------------------------ X

**AFFIRMATION OF LOUIS PECHMAN IN SUPPORT OF MOTION FOR PRELIMINARY CLASS ACTION SETTLEMENT APPROVAL**

Louis Pechman, under penalty of perjury, affirms as follows:

      1.      I am the principal attorney at Pechman Law Group PLLC ("PLG") in New York, New York. Along with Gianfranco J. Cuadra, a partner at PLG, I am one of the attorneys primarily responsible for prosecuting the claims of Plaintiff Ramon Valencia and opt-in Plaintiff Norelvi Serrano (together, "Plaintiffs") on behalf of themselves and the putative classes.

      2.      I am personally familiar with the facts and circumstances discussed below and in the attached exhibits.

      3.      Pursuant to the Court's electronic Order dated November 15, 2021, I submit this affirmation in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement and Provisional Certification of Settlement Class (the "Motion for Preliminary Approval").[1]

---

[1] Unless otherwise defined, all capitalized terms and abbreviations used in this Declaration have the meanings assigned to them in the Parties' Joint Stipulation of Class and Collective Settlement and Release (the "Stipulation"), attached as Exhibit "1." All exhibits to the Stipulation are referenced here and in the accompanying Memorandum by the prefix "Ex." and the letter designated to them in the Stipulation (*e.g.*, "Ex. A" refers to the CAFA Notice annexed to the Stipulation, Ex. 1 § II(2)).

## BACKGROUND AND PROCEDURAL HISTORY

4. Plaintiffs worked as security monitors at Live Lion, Defendants' surveillance and security business in Brooklyn, New York. *See* ECF No. 1 ¶¶ 6, 25.[2] Live Lion employed individuals, such as plaintiffs, to remotely monitor its clients' worksites and business locations. *Id.* ¶ 25. If a crime occurred on a worksite, for example, a Live Lion security monitor would contact the local police on behalf of Defendants' client. *Id.*

5. Plaintiff Ramon Valencia filed his Complaint on January 27, 2021. *See generally id.* On March 15, 2021, Norelvi Serrano opted-in to the Action by filing a consent to sue form. ECF No. 9.

6. In his Complaint, Valencia alleges that Defendants paid him and all other security monitors on a straight time basis, meaning at the same hourly wage rate per hour worked, including per hour worked over forty per workweek. *See, e.g.*, ECF No. 1 ¶¶ 1, 28–29, 44, 53. For example, Valencia claims to have worked 47 hours on the workweek of September 5 to 11, 2018, and that Defendants paid him $14 per hour worked, including each of his seven overtime hours. *Id.* ¶ 32.

7. The Complaint also alleges that Defendants paid Valencia and all other security monitors at the minimum wage rate and required them to work shifts longer than ten hours without paying them spread-of-hours pay, meaning an extra hour of pay at the applicable minimum wage rate. *Id.* ¶¶ 1, 30, 53, 73–76. For example, Valencia claims that Defendants owe him $45 in unpaid spread-of-hours pay for the workweek of April 17 to 23, 2019, when he worked three shifts that were longer than ten hours. *Id.* ¶¶ 34–35.

---

[2] References to "ECF" are to the Court's Electronic Case Files system and docket in the Action.

8. Finally, the Complaint alleges that Defendants failed to provide Valencia and all other security monitors with wage statements with their weekly wage payments and with wage notices at the time of hiring. *Id.* ¶¶ 26–27.

9. Plaintiff asserts his claims under the New York Labor Law ("NYLL") and Wage Theft Prevention Act ("WTPA") on a putative class action basis under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and his claim for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, on a collective action basis under 29 U.S.C. § 216(b). *See id.* ¶¶ 43–83.

10. On January 28, 2021, the Court issued an Initial Pretrial Discovery and Mediation Schedule. ECF No. 5.

11. On April 23, 2021, Defendants filed an Answer generally denying most material allegations concerning Plaintiff's WTPA claims and several of the hours Plaintiff alleged working. *See* ECF No. 11. Defendants also denied that certification under Rule 23 or the FLSA is proper in this Action or that other security monitors were "similarly situated" to Plaintiff. *See generally id.* at ¶¶ 43–60.

12. By joint letter dated June 16, 2021, the Parties informed the Court that they wished to mediate this case on a class-wide basis before the Court-annexed mediation program. ECF No. 12. The Parties stated that they would first need to conduct limited class-wide discovery, so that Plaintiffs' counsel could calculate damages on a class-wide basis in anticipation of mediation. *Id.*

13. By electronic Order dated June 16, 2021, the Court granted the Parties' joint letter-motion and directed them to file a joint status report by August 31, 2021.

14. Per the Court's Order, on August 30, 2021, the Parties filed a joint status letter informing the Court that they had exchanged all information necessary for mediation on a class-wide basis and requesting a reference to the Court-annexed

3

mediation program. ECF No. 13. The Court granted the Parties' request by electronic Order dated August 30, 2021, which also directed the Parties to complete mediation by October 29, 2021.

15. By electronic notice dated September 29, 2021, the Court's mediation program office informed the Parties that Philip Goldstein, Esq. was selected as mediator and that the first mediation session would take place by October 19, 2021.

## SETTLEMENT DISCUSSIONS AND MEDIATION

16. On June 2, 2021, the Parties, through counsel, discussed the prospect of settlement, including the exchange of all time and pay records for all individuals who worked as security monitors at Live Lion.

17. Between June 22 and June 24, 2021, Counsel for Defendants produced approximately 2,150 pages of payroll and time records for all potential Class Members and clarified that Live Lion did not start employing security monitors until late 2017.

18. The records reflected that many Live Lion security monitors did not work more than forty hours per workweek or shifts longer than ten hours per day.

19. Relying on the documents produced, Plaintiffs' counsel calculated damages for the potential Class in August 2021 and shared the calculations with Defendants' Counsel on August 25, 2021. The Class's total alleged damages, inclusive of liquidated and statutory damages under the NYLL and WTPA and pre-judgment interest under the NYLL, was $649,692.46. A summary of the Class's alleged damages follows:

| Unpaid Overtime Wages (FLSA & NYLL) | $43,019.23 |
| Unpaid Spread-of-Hours Pay (NYLL) | $34,752.00 |
| Liquidated Damages (under NYLL) | $77,771.23 |
| NYLL § 195(1) Damages (WTPA notices) | $174,900.00 |
| NYLL § 195(3) Damages (WTPA paystubs) | $319,250.00 |
| **Total Alleged Damages:** | **$649,692.46** |

4

20. On October 19, 2021, the Parties and their respective attorneys attended a mediation before Philip Goldstein, Esq. With Mr. Goldstein's help, the Parties reached a settlement in principle for $350,000.

21. By October 27, 2021, the Parties finished and signed a term sheet memorializing the primary terms of their Settlement.

22. By Order dated November 8, 2021, the Court ordered the Parties to submit a status report by November 10, 2021, which the Parties then submitted. ECF No. 15.

23. By electronic Order dated November 10, 2021, the Court ordered the Parties to submit their settlement agreement and settlement approval letter pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

24. On November 12, 2021, Plaintiffs' counsel submitted a joint letter-motion to the Court explaining that the Settlement is on a class action basis, and so the procedures of Rule 23 apply. ECF No. 17. The letter-motion also explained that Defendants would fund the Settlement Payment of $350,000 in installments throughout 2022 due to liquidity and financial issues. *Id.* Because of this, and to avoid making installment payments to the Class, the Parties requested a prolonged briefing schedule. *Id.* The Parties also submitted a proposed order referring the Action to the assigned Magistrate Judge for all purposes. *See id.* at 2; ECF No. 16-1.

25. By electronic Order dated November 15, 2021, the Court granted the letter-motion and ordered the Parties to file their preliminary approval motion by February 4, 2022.

26. Plaintiffs' counsel drafted the Agreement in December 2021 and shared a draft of it with Counsel for Defendants on January 4, 2022. Counsel for Defendants submitted edits to the Agreement on January 18, 2022.

5

27. Plaintiffs signed the Agreement on January 27, 2022. *See* Ex. 1 at 18–19.

28. On the same date, the Parties filed another joint letter-motion, with an attached proposed order, again requesting that this Action be referred for all purposes to the assigned Magistrate Judge. ECF No. 18.

29. For the reasons explained here and in the accompanying Motion for Preliminary Approval, the Court should preliminarily approve the Settlement as a fair, adequate, and reasonable compromise under the FLSA and Rule 23.

## THE PROPOSED SETTLEMENT TERMS AND STRUCTURE

30. The Settlement provides for full resolution of all Class Members' FLSA, NYLL, and WTPA claims in exchange for the receipt of a Settlement Check, in the case of state law claims, and the payment of a Settlement Share, in the case of FLSA claims.

31. With respect to NYLL and WTPA state law claims, all Class Members who neither object to nor opt-out of the Rule 23 class action Settlement will become "Rule 23 Class Members." Ex. 1 § II(36). Plaintiffs and all Rule 23 Class Members will receive a Settlement Check. *Id.* §§ XVI(2), XVIII(2). In exchange for his or her receipt of a Settlement Check, Plaintiffs and Rule 23 Class Members release Defendants from all wage-and-hour claims, including claims for unpaid wages, liquidated damages, interest, statutory damages, and attorneys' fees and costs, under the NYLL and WTPA that were pled or could have been pled in the Action. *Id.* XVIII(2).

32. As noted, Plaintiffs and all Rule 23 Class Members will receive a Settlement Check. *Id.* § XVIII(2). The back of every Settlement Check will contain the following statement next to the endorsement line:

**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I consent to join the FLSA collective action against Defendants styled *Valencia v. Live Lion Security LLC, et al.*, No. 21 Civ. 448 and release Defendants from all wage-and-hour claims under the Fair Labor Standards

        Act and the New York Labor Law brought or that could have been brought in the Action, including but not limited to unpaid overtime wages, spread-of-hours pay, and claims for statutory penalties under the Wage Theft Prevention Act.

_____      Dated:_____
Signature

        Any modification or amendment of the above-language by the Class Member is unacceptable and may, at Defendants' sole discretion, void the Settlement Check.

*Id.* § XVII(4). Accordingly, by endorsing and cashing his or her Settlement Check, a Rule 23 Class Member becomes an FLSA Collective Member and thereby opts-in to this Action under 29 U.S.C. § 216(b). *Id.* §§ II(24), XVI(2). To prevent fraud, the front of each Settlement Check will reflect the following statement in capitalized bold-typeface letters: "**ATTENTION: ONLY THE RECIPIENT TO WHOM THIS CHECK IS WRITTEN MAY DEPOSIT AND/OR CASH THIS CHECK. THIS CHECK IS NON-TRANSFERABLE.**" *Id.* § XVII(5).

        33.     In exchange for the receipt of a Settlement Share (*i.e.*, the cash payment), Plaintiffs and FLSA Collective Members release the Released Parties from any and all wage-and-hour claims, including claims for unpaid wages, interest, liquidated damages, interest, and attorneys' fees and costs, under the FLSA that were pled or that could have been pled in the Action. *Id.* § XVIII(3).

        34.     Defendants shall deposit $350,000 (the "Settlement Payment") into the Qualified Settlement Fund, or QSF (*i.e.*, a bank account), in equal monthly installment payments on the first day of each month following twenty (20) days from the Court's entry of the Preliminary Approval Order until October 1, 2022. *Id.* §§ II(33), II(40), XV(2).

        35.     Subject to Court approval, the Parties propose Rust Consulting Inc. to serve as Claims Administrator. *Id.* §§ II(4), VI(1). The Claims Administrator will perform significant work, such as mail and email Notice Materials to Class Members; perform skip

traces and national change of address database searches; work with Class Counsel to locate missing Class Members; track returned and undeliverable Notice Materials, objections, and opt-out statements; ensure that Defendants pay the Settlement Payment; create and manage the Qualified Settlement Fund as required by the Stipulation; write out and mail Settlement Checks with required tax documents to Rule 23 Class Members; monitor the cashing of Settlement Checks; and communicate with Class Members concerning the Action. *Id.* §§ VI(1), VIII(1)(b)–(e), VIII(2), XV(1), XVI(2), XVII(1), XVII(3).

36. The Stipulation calls for payment of combined service awards of $15,000 to the Class Representatives, equal to $10,000 to Plaintiff Ramon Valencia and $5,000 to opt-in Plaintiff Norveli Serrano, Class Counsel's fees of 33.33% of the Settlement Payment (*i.e.*, $116,666.00), up to $1,300 to Class Counsel for reimbursement of costs incurred in the prosecution of the Action, and up to $18,000 payable to the Claims Administrator as fees. *Id.* § XI. The Class Representatives alone release all claims against Defendants in exchange for their eligibility for their respective service awards. *Id.* § XVIII(1).

37. Furthermore, the Stipulation calls for the creation from the Settlement Payment of a temporary Reserve Fund of $20,000, which will be used to address and pay for modifications of Settlement Shares of Class Members who (a) prove their Settlement Share was miscalculated or (b) prove they were inappropriately excluded from the Settlement, because they were not in Defendants' payroll records. *Id.* § XII(1)–(3).

38. The "Net QSF" is the money amount remaining of the Settlement Payment after deducting the Class Representatives' service awards, Class Counsel's attorneys' fees and costs, the Claims Administrator's fees, and adding back into the QSF what remains of the Reserve Fund. *See id.* II(26), XVI(1). By way of example, assuming the Reserve Fund were fully depleted, the estimated Net QSF would be $179,033.34, equal to the Settlement Payment of $350,000 minus the $20,000 Reserve Fund, $15,000 in combined

8

service awards, $116,666 in Class Counsel's fees, $1,300 in Class Counsel's costs, and $18,000 in Claims Administrator fees. *See id.* XVI(1); *see* Ex. F.

39.     Class Counsel calculated damages for each Class Member. *See id.* Ex. F at Cols. D–H. The amount due to each Class Member in unpaid wages (*i.e.*, spread-of-hours and overtime wages combined) plus NYLL liquidated damages is set forth in Column J of Exhibit F. *See* Ex. F at Col. J. For example, Plaintiff Valencia's unpaid wages equal $5,436.16, with an equal amount due in liquidated damages under the NYLL, for a total of $10,872.32. Ex. F at Cols. D–F, J, Row 114. The alleged unpaid overtime wages, unpaid spread-of-hours pay, and liquidated damages of all Class Members combined equal $155,542.26. *Id.* at Col. J, Row 122. On average, Class Members' total unpaid wages (*i.e.*, overtime plus spread-of-hours) is $682.20. *See generally id.* Col. F. The highest amount is $9,052.73, and the lowest is $1.28. *See id.*

40.     The estimated Net QSF of $179,033.34 minus the alleged unpaid wages and liquidated damages of $155,542.26 equals $23,490.88. *Id.* at Col. B, Row 139. This amount was distributed proportionally among all Class Members to pay for part of their respective WTPA damages. Combined, all Class Members are allegedly owed $494,150 in WTPA damages. *Id.* Col. K, Row 122. Each Class Member's alleged WTPA damages divided by the total WTPA damages due to the Class yields a percentage, which Class Counsel multiplied by the $23,490.88 remaining in the Net QSF to calculate each Class Member's share of WTPA damages paid. *See id.* at Col. B, Row 139 (reflecting "After Wages" amount left in estimated Net QSF).

41.     For example, Plaintiff Ramon Valencia claims he is owed $10,000 in WTPA damages. *Id.* at Col. K, Row 144. That number divided by $494,150 equals 2.02%, which multiplied by $23,490.88 yields $474.52. *Id.* at Cols. L–M. As such, Plaintiff Ramon Valencia's estimated Settlement Share is $11,346.84, equal to his $10,872.32 owed in

unpaid wages and liquidated damages plus his $474.52 share of the $23,490.88 left in the Net QSF being used to pay for WTPA damages. *See id.* at Col. N, Row 114.

42. If the Court preliminarily approves the Settlement, as the Parties believe it should, the Claims Administrator will mail all Class Members the Notice Materials, enclosed to the Stipulation as Exhibits B and C, within thirty days of the Court's entry of the Preliminary Approval Order. *Id.* §§ II(28), VIII(1)(b).

43. The Class Notices will reflect each Class Member's individual Settlement Share and the formula used to calculated it:

> Your "Settlement Share" is equal to all of your alleged unpaid overtime wages and spread-of-hours pay multiplied by two plus a portion of your alleged WTPA damages. The "Net Settlement Amount" is the money remaining of the $350,000 after subtracting from it (a) all wages (multiplied by 2) being paid to Class Members as part of their Settlement Shares, (b) litigation costs, (c) attorney's fees, (d) service payments to Class Representatives, (e) the Claim Administrator's service fees, and (f) a temporary $20,000 reserve fund. Class Counsel divided your individual alleged WTPA damages by the WTPA damages for all Class Members combined, yielding a percentage. That percentage was multiplied by the Net Settlement Amount. The resulting number, added to two times your alleged unpaid wages, equals your estimated Settlement Share. Please note your estimated Settlement Share is only an estimate. As noted, there is a temporary hold on $20,000 of the Settlement Payment, which may or may not be used up before the Lawsuit ends depending on several factors. Whatever portion of the $20,000 Reserve Fund that is not spent will be added back into the Net Settlement Amount, thereby increasing each Class Member's Settlement Share.
> Live Lion will make a settlement payment to all class members who do not exclude themselves from this Settlement (known as the "Rule 23 Class Members").
> **BASED ON THE FOREGOING, YOUR ESTIMATED SETTLEMENT SHARE IS: $_____.**

Ex. C ¶ 3.

44. The Class Notice explains to Class Members what the Action is about and, if they choose to do so, how to exclude themselves from or object to the Settlement. *Id.* ¶¶ 1, 2, 7, 9. It includes a description of the nature of the Action, the class action claims, and why the Class Member is receiving Notice Materials. *Id.* ¶ 1. The Class Notice further explains Defendants' position and defenses and why the Action settled. *Id.* ¶ 2.

45. The Class Notice explains that Class Members do not have to do anything to receive a Settlement Check. *Id.* ¶ 4.

46. The Class Notice explains that Class Members give up rights under New York law in exchange for receipt of a Settlement Check as Rule 23 Class Members. *Id.* ¶¶ 5–6. It also explains that they give up rights under the FLSA in exchange for depositing/cashing their checks as Claimants. *Id.* ¶ 6. The Class Notice further explains to Class Members that they are represented by PLG, but they have the right to retain another attorney at their own expense. *Id.* ¶ 11. Finally, the Class Notice states that Class Members should contact Class Counsel, and not the Court, with questions. *Id.* ¶¶ 10, 11.

47. The Class Notice explains that Rule 23 Class Members will have 180 days from the date of the mailing of Settlement Checks to cash/deposit them. *Id.* ¶ 3. Checks not cashed by the 181st day after mailing will be void and its proceeds will revert to Defendants. *Id.* Defendants will pay half of each Settlement Share under IRS Tax Form 1099 and the other half under IRS Tax Form W-4. *Id.*

## CERTIFICATION OF THE SETTLEMENT CLASS

48. Of the 114 people who worked as Security Monitors during the Liability Period, 87 are Class Members who sustained alleged damages for unpaid wages and WTPA violations. *See* Ex. F. For the purposes of this Settlement only, the Parties have stipulated that the "Court may certify the Class as an opt-out class action under Rule 23(b)(3)" and as a collective action under the FLSA. *Id.* § V(1)–(3).

49. Although notice of the Settlement has not yet been issued, Class Counsel and Plaintiffs support the Settlement and believe that it is a fair and reasonable resolution.

50. Plaintiffs are adequate representatives of the proposed classes and have provided valuable input to Class Counsel throughout the Action. They have fairly and adequately represented and protected the interests of all putative Class Members and

11

have no known conflicts with any of them. Plaintiff Ramon Valencia assisted with the preparation of the Class Action Complaint. Both Plaintiffs reviewed several documents produced by Defendants, assisted with the preparation of the mediation statement, and attended and participated at the mediation. Plaintiff Ramon Valencia shouldered the risks incurred as the sole named Plaintiff. Moreover, even after this matter is settled, Plaintiffs will help Class Counsel and the Claims Administrator identify and locate Class Members whose mailings are returned as undeliverable.

51. Attached as Exhibit E to the Stipulation is a proposed Preliminary Approval Order certifying, for purposes of settlement only, the NYLL class under Rule 23 and the FLSA Collective Action; preliminarily approving the Parties' settlement on a class-wide basis as embodied in the Stipulation; appointing PLG as class counsel; appointing Plaintiffs as Class Representatives; appointing Rust Consulting Inc. as Claims Administrator; approving the Notice Materials; ordering the Claims Administrator to disseminate the Notice Materials to Class Members, as set forth in the Stipulation; and scheduling a Final Approval Hearing date.

## BACKGROUND AND EXPERIENCE OF CLASS COUNSEL

52. PLG specializes in representing both workers and businesses in workplace disputes. We have advocated for busboys and construction workers as well as corporate executives and Fortune 500 companies. Our experience with and ability to see all the angles of a dispute has earned us a reputation for resolving difficult cases.

53. PLG meets all relevant criteria for appointment as class counsel under Rule 23. The firm has done substantial work identifying, investigating, prosecuting, and settling the claims; has substantial experience prosecuting and settling wage-and-hour actions, including class actions; is well-versed in wage-and-hour and class action law; and is well-qualified to represent the interests of the Class. PLG has not identified any

other lawsuits against Defendants by Defendants' employees. PLG is committed to spending resources and time to prosecuting and settling this Action, and to date has expended significant resources doing so.

54. Since graduating from Fordham Law School in 1983, I have specialized in labor and employment law. I was an attorney at Skadden, Arps, Slate, Meagher & Flom LLP; Vladeck, Waldman, Elias & Engelhard, P.C.; the Daily News; and Lambos & Giardino/Lambos & Junge. From 1996 through 2014, I was a partner at Berke-Weiss & Pechman LLP, the predecessor firm to PLG. On January 1, 2015, I founded PLG.

55. I am licensed to practice law in the State of New York and am admitted in all United States District Courts of New York, as well as the Second Circuit Court of Appeals. I am also licensed to practice in the State of New Jersey and am admitted in the United States District Court for the District of New Jersey.

56. Over the past several years, I have handled over 300 wage-and-hour cases, representing both employees and employers, including Fortune 500 corporations. *See Sajvin v. Singh Farm*, No. 17-cv-4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (noting that "Pechman's experience, expertise, and reputation in this District [warranted] an award slightly above the current stagnant hourly rate") (Reyes, M.J). I have been appointed class counsel or counsel for FLSA collective classes in several wage-and-hour cases. *See, e.g., Soriano v. D&J Export, Inc.*, No. 18 Civ. 194 (E.D.N.Y. 2019) (appointing PLG, including Louis Pechman and Gianfranco J. Cuadra, as class counsel and approving settlement); *Manley v. Midan Rest., Inc.*, No. 14 Civ. 1693, 2017 WL 1155916, at *9 (S.D.N.Y. Mar. 27, 2017) ("Louis Pechman and the Pechman Law Group have significant experience representing both employers and employees in wage and hour actions in this District. . . . Louis Pechman has an excellent reputation in this District in the field of employment law."); *Carino v. Broadway & 166, LLC*, No. 10 Civ. 8506, Docket No. 35 at *4 (S.D.NY. May

1, 2013) (recognizing that Louis Pechman "used his considerable expertise in this wage and hour case to achieve an excellent result for the Class in a highly efficient manner"); *In re Chickie's and Pete's Wage and Hour Litigation*, No. 12 Civ. 6820, Docket Entry No. 80 at *1 (E.D. Pa. Mar. 28, 2013) (consolidating cases and appointing Louis Pechman as lead counsel); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 WL 5841175, at *2 (S.D.NY. Sept. 10, 2009) (recognizing Louis Pechman's "extensive experience in litigating wage and hour class actions").

57. I speak frequently on employment law issues, with a focus on wage-and-hour topics. Since 2010, I have moderated an annual program at the New York County Lawyers' Association on "How to Handle a Wage and Hour Case." I last moderated this program in November 2021. On October 6, 2015, I moderated a program at the City Bar on "Current Issues in Settlement of FLSA Cases," which included Judge Lewis A. Kaplan, Magistrate Judge Ronald L. Ellis, and Judge Brian M. Cogan. On September 30, 2015, I moderated a Bloomberg BNA webinar entitled "Top Ten FLSA Litigation Issues: 2015 Edition," which included Magistrate Judge Ramon E. Reyes. On March 2, 2016, I spoke at the New York Hospitality Restaurant Alliance on tipping policies at New York City restaurants. On March 11, 2016, I spoke at the New York City Employment Law Institute on a panel titled, "Prosecuting & Defending Wage and Hour Cases." On September 29, 2016, I spoke in a panel, which included Magistrate Judge Steven M. Gold, in a Bloomberg BNA webinar titled "Top Ten FLSA Litigation Issues: 2016 Edition." On October 24, 2016, I moderated a program at the New York City Bar titled "FLSA Settlement Issues One Year After *Cheeks*," presented by a panel including Chief Magistrate Judge Debra Freeman, District Judge Richard Sullivan, and Magistrate Judge Marilyn Go. On June 12, 2017, I served as a panelist in the American Conference Institute's 30th National Forum on Wage & Hour Claims and Class Actions as part of a presentation titled "Trends in Wage & Hour

Class & Collective Actions." Every year since 2017, I have moderated a New York City Bar CLE-accredited program titled "FLSA Math: How to Calculate Wage-Related Damages." I was also Chair of the Restaurant and Hospitality Law Committee of the Bar of the City of New York from 2014 to 2017. I am also a frequent contributor to the New York Law Journal. My recent articles include *Cheeks v. Freeport Pancake House: Five Years Later* (Aug. 6, 2020), *Rights of Undocumented Workers in Wage Theft Cases* (Mar. 13, 2020), and *Prevailing Wage Law in New York's Construction Industry* (Nov. 22, 2021). I serve as an Adjunct Professor at Fordham University School of Law, where I teach a course titled "Wage Theft: Employee Rights and Employer Responsibilities."

58. PLG is "A-V" rated by Martindale-Hubbell and I have been selected by my peers for inclusion in The Best Lawyers in America and in New York Super Lawyers since 2007. PLG has been selected by Best Lawyers as a "Tier 1" New York City law firm in the areas of "Employment Law – Individuals" and "Employment Law – Management" every year from 2017 to 2021. I have also been selected as a Fellow of the American Bar Association, an honorary organization limited to 1% of attorneys who have demonstrated outstanding achievements and dedication to the highest principles of the legal profession. I was recognized in 2021 as one of the Law Dragon 500 leading U.S. Corporate Employment lawyers.

59. Gianfranco J. Cuadra, my partner at PLG working on this matter, received his J.D. degree *magna cum laude* from Hofstra Law School in May 2009, where he was Research Editor of the Hofstra Law Review and an honorary member of the National Order of Scribes for outstanding legal writing. Mr. Cuadra is admitted to practice in the United States District Courts for the Eastern, Western, and Southern Districts of New York and is a member in good standing of the New York State Bar. Prior to joining PLG, Mr. Cuadra worked as an associate attorney at Winston & Strawn LLP. He first worked

at PLG as an associate attorney from March 2015 through December 2020. Since January 1, 2021, Mr. Cuadra has been a partner at PLG. Since 2015, Mr. Cuadra has litigated over 100 wage-and-hour cases ranging from individual plaintiff to class and collective actions on behalf of both employees and management.

60. Mr. Cuadra has presented in numerous CLE-accredited programs, most of which concern wage-and-hour issues. Every year since 2017, Mr. Cuadra has served as a panelist in a New York City Bar program titled "FLSA Math: How to Calculate Wage-Related Damages," which he last did in October 2021. On November 15, 2018, Mr. Cuadra served as a panelist in a day-long mediator training program organized by the United States District Court, Southern District of New York on how to mediate wage-and-hour disputes under the FLSA and the NYLL. On May 6, 2020, Mr. Cuadra served as a panelist in a New York City Bar webinar titled "Employment During a Pandemic: COVID-19 and the Major Issues Affecting New York Workplaces," where he presented on, *inter alia*, major wage-and-hour issues arising in the wake of the COVID-19 pandemic. On April 13, 2021, Mr. Cuadra presented in a New York City Bar webinar titled "How to Handle a Prevailing Wage Matter in New York." On June 1, 2021, Mr. Cuadra again presented in a New York City Bar webinar titled "Classifying Workers: Employed, Jointly Employed, or Independent Contractor," concerning misclassification issues in wage-and-hour actions. On November 22, 2021, Mr. Cuadra published an article in the New York Law Journal titled *Prevailing Wage Law in New York's Construction Industry*, concerning the litigation and settlement of prevailing wage actions under Article 8 of the NYLL. On March 4, 2022, Mr. Cuadra will moderate and present in the wage-and-hour panel of the New York City Bar's annual Employment Law Institute. Mr. Cuadra is a native Spanish speaker, the language of both Plaintiffs.

61. Mirian Albert received her J.D. degree from CUNY School of Law in May 2020, where she served as Staff Editor for CUNY Law Review.  She is admitted to practices in the United States District Courts for the Southern and Eastern Districts of New York.  Ms. Albert is a member in good standing of the New York State Bar.  Since joining PLG in October 2020, Ms. Albert has been actively involved in the ligation of over twenty wage-and-hour matters.  Ms. Albert has independently conducted client meetings, drafted and filed pleadings, drafted discovery requests and responses, and participated in pretrial conferences, including settlement conferences.  Ms. Albert is a native Spanish speaker, the native language of both Plaintiffs.

62. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated:  New York, New York
        February 4, 2022

                                          *s/ Louis Pechman*
                                          Louis Pechman