*Valencia v. Live Lion Security LLC*
No. 21 Civ. 448 (PK)

# EXHIBIT 1

# Joint Stipulation of Class and Collective Settlement and Release

Affirmation of Louis Pechman in Support of Motion
for Preliminary Settlement Approval

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
RAMON VALENCIA, on behalf of himself and all       :
others similarly situated,                         :
                                                   :
                              Plaintiff,           :
                                                   :
                     -against-                     :        **21 Civ. 00448 (PK)**
                                                   :
LIVE LION SECURITY LLC, BENJAMIN MEHREL,           :
and JOSEPH JACOBOWITZ,                             :
                                                   :
                              Defendants.          :
------------------------------------------------------------------- X

## JOINT STIPULATION OF CLASS AND
## COLLECTIVE SETTLEMENT AND RELEASE

This Joint Stipulation of Class and Collective Settlement and Release (the "Stipulation") reflects the terms of the Parties' settlement on a class and collective basis (the "Settlement") and is made and entered into by and among Plaintiff Ramon Valencia and opt-in Plaintiff Norelvi Serrano ("Plaintiffs" or "Class Representatives"), individually and on behalf of the putative class and collective action members, and Defendants Live Lion LLC, Benjamin Mehrel, and Joseph Jacobowitz (collectively, "Defendants," "Live Lion," or the "Company"). Plaintiffs and Defendants are jointly referred to in this Stipulation as the "Parties" and each individually as a "Party."

**I.      TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT**

With the assistance of their respective counsel, the Parties agree that in exchange for Defendants' payment of the Settlement Amount, certain claims set forth below shall be forever released and the Action shall be dismissed with prejudice subject to the terms and conditions of this Stipulation and the Judgment (defined below).

**II.     DEFINITIONS**

The following terms have the meanings designated below:

**1.**      "**Action**" means the civil action titled *Valencia v. Live Lion Security LLC*, No. 21 Civ. 00448 (PK), now pending before the Court (as defined below).

**2.**      "**CAFA Notice**" means the notice to be sent by Defendants to the appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b). A copy of the respective CAFA Notices are enclosed as Exhibit A.

**3.**      "**Change of Name and/or Address Form**" means the form, substantially in the form attached to this Stipulation as Exhibit B, by which a Class Member may provide

his or her correct name and address to the Class Counsel if it is now different than what is reflected in Defendants' personnel data.

4.     "**Claims Administrator**," also referred to as "**Settlement Administrator**," means the entity selected by the Parties, subject to Court approval, to provide class administration services set forth in this Stipulation.

5.     "**Class**" refers to all individuals (*i.e.*, Class Members) that Class Counsel and the Class Representative seek to represent in the Settlement.

6.     "**Class Counsel**" means Pechman Law Group PLLC ("PLG"), 488 Madison Avenue, 17th Floor, New York, NY 10022, (212) 583–9500.

7.     "**Class Member**" is an individual who (a) was employed by Defendants at Live Lion Security LLC, (b) paid on an hourly basis, and (c) worked more than 40 hours during at least one workweek and/or a shift longer than ten hours at any point from July 2017 through January 27, 2021 (*i.e.*, the "Class Period," as defined below).

8.     "**Class Notice**" means the notice of Proposed Notice of Class and Collective Action Settlement to be sent to Class Members in English and Spanish after the Court preliminarily approves the Settlement, substantially in the form of Exhibit C attached.

9.     "**Class Period**" means the period from July 2017 through January 27, 2021.

10.     "**Class Representatives**" or "**Plaintiffs**" means collectively named plaintiff Ramon Valencia and opt-in Plaintiff Norelvi Serrano.

11.     "**Class Representatives' Released Claims**" has the meaning set forth in Section XVIII below.

12.     "**Class Stipulation**" has the meaning set forth in Section V below.

13.     "**Company**" has the same meaning as "**Live Lion**" and "**Defendants**."

14.     "**Counsel for Defendants**" means Moskowitz & Book, LLP, 345 Seventh Avenue, 21st Floor, New York, New York 10001, (212) 221–7999.

15.     "**Court**" refers to the United States District Court, Eastern District of New York, where the Action was filed.

16.     "**Live Lion**" has the same meaning as "**Company**" and "**Defendants**."

17.     "**Day(s)**" refers to calendar days unless indicated as business days.

18.     "**Defendants**" refers collectively to Live Lion Security LLC, Benjamin Mehrel, and Joseph Jacobowitz.  "**Live Lion**" and "**Company**" have the same meaning as "**Defendants**" in this Stipulation.

19.     "**Fairness Hearing**" refers to the final hearing, to be scheduled by the Court, at which the Court will determine whether to enter the Final Approval Order.

20. "**Final**" means the later of:

    a.    thirty (30) days after the Court enters the Final Approval Order of the Settlement dismissing the Action with prejudice; or

    b.    if an appeal is filed, then the day after the final resolution of that appeal (including any requests for rehearing and/or petitions for writ of certiorari) resulting in the final judicial approval of the Settlement.

21. "**Final Approval Order**" means the Court's order granting final approval of the Settlement, which will constitute a "judgment" within the meaning of Rule 58(a) of the Federal Rules of Civil Procedure, substantially in the form of Exhibit D attached.

22. "**FLSA**" refers to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, including its amendments and interpretive and implementing regulations.

23. "**FLSA Collective Members**" refers to Plaintiffs and all Rule 23 Class Members who negotiate and/or deposit their Settlement Checks.

24. "**FLSA Collective Members' Released Claims**" has the meaning set forth in Section XVIII below.

25. "**FLSA Stipulation**" has the meaning set forth in Section V below.

26. "**Net Qualified Settlement Fund**" or "**Net QSF**" means the money left in the Qualified Settlement Fund for distribution to Class Members after addition of amounts left in the Reserve Fund and deduction of Class Counsel's fees and costs, the Settlement Administrator's fees and costs, and the Class Representatives' service awards.

27. "**NYLL**" refers to the Articles 6 and 19 of the New York Labor Law, including their amendments and interpretive and implementing regulations such as but not limited to 12 N.Y.C.R.R. Part 142.

28. "**Notice Materials**" refers to the Change of Name and/or Address Form and the Class Notice, attached as Exhibits B and C, respectively.

29. "**Objector**" is defined in Section VIII(3)(b) below.

30. "**Optout Period**" means one hundred (100) days from the date on which the Settlement Administrator mails the Notice Materials to the Class Members.

31. "**Optout Statement**" refers to a Class Member's written statement choosing not to participate in the Settlement, as set forth in Section VIII(2)(a) below.

32. "**Preliminary Approval Order**" means the Court's order granting preliminary approval of the Settlement, substantially in the form of Exhibit E attached.

33. "**Qualified Settlement Fund**" or "**QSF**" means the qualified settlement fund (*i.e.*, bank account) established, controlled, and administered by the Claims

Administrator into which Live Lion will deposit the complete Settlement Payment in equal monthly installments by no later than October 1, 2022.

34.    **"Reserve Fund"** refers to twenty thousand dollars ($20,000.00) of the Settlement Payment temporarily put aside to pay for any potential disputed, untimely, and self-identified claims proven with evidence.

35.    **"Released Parties"** has the meaning set forth in Section XVIII(1) below.

36.    **"Rule 23 Class Member"** refers to a Class Member who does not submit a valid Optout Statement.

37.    **"Rule 23 Class Members' Released Claims"** has the meaning set forth in Section XVIII below.

38.    **"Settlement"** refers to the settlement terms in this Stipulation.

39.    **"Settlement Check(s)"** refers to the checks the Claims Administrator will issue and mail to each Rule 23 Class Member.

40.    **"Settlement Payment"** means the payment by Live Lion, pursuant to this Stipulation, of $350,000.00 to fund the QSF.

41.    **"Settlement Share"** means each Class Member's available share of the Net QSF, as calculated by Class Counsel with the Claims Administrator and set forth in the Settlement Shares List.

42.    **"Settlement Shares List"** refers to the list reflecting the estimated Settlement Shares of each Class Member from the Net QSF, enclosed as Exhibit F.

43.    **"WTPA"** refers to the Wage Theft Prevention Act, NYLL §§ 195 and 198, including its amendments and interpretive and implementing regulations.

## III.    RECITALS AND BACKGROUND

1.    Plaintiff Ramon Valencia, a former security monitor at Live Lion in Brooklyn, New York, filed the Action in the Court on January 27, 2021.  On March 15, 2021, opt-in Plaintiff Norelvi Serrano joined the Action.  The Class Representatives allege that Live Lion failed to (a) pay them overtime wages equal to one and one-half times their regular hourly wage rates, (b) pay them spread-of-hours wages for shifts worked that were longer than ten hours, (c) furnish them with weekly paystubs accurately reflecting their overtime wage rates and hours worked, and (d) furnish them with wage notices upon hiring.  The Complaint asserted Plaintiffs' claim for unpaid overtime wages under the FLSA as a collective action and all remaining claims under the NYLL and WTPA as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of Plaintiffs and all other security monitors who worked at Live Lion at any time in the Class Period.

2.    Live Lion filed an Answer on April 23, 2021, denying all material allegations in Plaintiffs' Complaint, asserting that Plaintiffs and the proposed Class were properly

paid all wages due under the FLSA and the NYLL, and maintaining that Defendants bore no liability to Plaintiffs or the proposed Class for wages, penalties, or otherwise.

> **3.** Thereafter, the Parties commenced arm's length negotiations to resolve the Action, and in doing so, Defendants shared payroll data with Class Counsel indicating each Class Member's regular hourly wage rate paid and number of hours worked per workweek throughout the Class Period. To the extent they were available, Class Counsel shared Plaintiffs' and other employees' paystubs with Counsel for Defendants. Based on the information exchanged, Class Counsel calculated damages for each Class Member.

> **4.** On October 19, 2021, the Parties, with their respective counsel, attended a day-long virtual mediation before mediator Philip Goldstein, Esq., at which the Parties reached a settlement in principle on a class and collective action basis. On November 12, 2021, the Parties submitted a letter-motion to the Court requesting a motion and settlement schedule, which would allow Defendants enough time to accumulate the complete Settlement Payment and avoid installment payments to Class Members.

> **5.** Based on the discovery conducted in this case, information exchanged confidentially for purposes of settlement discussions and mediation, and their own independent investigation and evaluation, Class Counsel believes that the Settlement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses Defendants asserted as to both class and collective action certification, the merits of the claims, and the risk of non-payment if the Action continues and depletes Defendants' finances.

> **6.** It is the mutual desire of the Parties to settle, compromise, and discharge all disputes and claims raised or that could have been raised in the Action fully and finally. The Class Representatives agree not to opt-out of the Settlement and acknowledge that this Settlement is intended to include and resolve all claims asserted in the Action.

> **7.** This Settlement represents a compromise of highly disputed claims. Nothing in this Settlement is intended to be or can be construed as an admission by Defendants or any of the Released Parties (defined below) of liability or the merit of Plaintiffs' allegations and claims.

## IV. DUTIES OF THE PARTIES TO SEEK PROMPT COURT APPROVAL

> **1. Duplicates List**. By no later than January 15, 2022, Defendants shall produce to Class Counsel a list reflecting (a) each Class Member's full name and (b) whether a Class Member worked or was also known at Live Lion under another name, including whether multiple names in the list refer to the same individual(s).

> **2. Preliminary Approval Motion**. Following the execution of this Stipulation, Plaintiffs shall move the Court for entry of the Preliminary Approval Order by February 4, 2022. Plaintiffs shall provide a draft of that motion to Counsel for Defendants for their review and comment at least five (5) business days before the filing deadline. The proposed Preliminary Approval Order is attached to this Stipulation as Exhibit E.

    **3.**    **Dispute Resolution**.  Any disagreement among the Parties concerning the final form of the Notice Materials or other documents necessary to implement the Settlement, as well as all other disputes regarding the Settlement and its implementation, will be referred to Philip Goldstein, Esq., or if he is not available to the Court, for resolution if the Parties' good faith efforts to resolve the disagreement in person or by phone have failed.

## V.    CERTIFICATION OF CLASSES FOR PURPOSES OF SETTLEMENT ONLY

    **1.**    **Class Stipulation**.  For purposes of the Settlement only, the Parties stipulate that the Court may certify the Class as an opt-out class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure (the "Class Stipulation").  More specifically, the Parties agree as part of the Class Stipulation that, for settlement purposes only, the requirements of Federal Rule 23(a) and Federal Rule 23(b)(3) are satisfied.

    **2.**    **FLSA Stipulation**.  For purposes of the Settlement only, the Parties also stipulate that all Class Members are similarly situated within the meaning the FLSA, 29 U.S.C. § 216(b) (the "FLSA Stipulation").

    **3.**    **Admissibility of Stipulations**.  The existence and terms of this Stipulation, the Class Stipulation, and the FLSA Stipulation shall not be admissible in this or any other action or proceeding for any purpose other than to enforce the terms of this Stipulation, including its releases and Defendants' payment obligations.

    **4.**    **Rescission of Agreement**.  If the Court grants final approval of the Settlement with material modification, or if the Court's final approval of the Settlement is reversed or materially modified on appellate review, either Party may declare the Settlement null and void.  If so, the terms and fact of this Settlement (and of any act performed or document executed pursuant to or in furtherance of the Settlement), the fact that the Parties had made the Class Stipulation and the FLSA Stipulation, or that the Court granted certification of the Class, certification of the collective action, or otherwise accepted either Stipulation, will be inadmissible evidence in any subsequent proceeding in the Action or elsewhere.

## VI.    APPOINTMENT AND DUTIES OF SETTLEMENT ADMINISTRATOR

    **1.**    **Claims Administrator; Duties**.  Subject to Court approval, the Parties have agreed to the appointment of _____ as Settlement Administrator to perform all necessary duties to administer the Settlement, such as: (i) prepare Class Notices for each Class Member reflecting his or her estimated Settlement Share; (ii) obtain forwarding addresses for Class Members using appropriate methods, including skip tracing, national change of address database searches, and searches performed with Class Counsel as described below; (iii) mail and email the Notice Materials to Class Members; (iv) track non-delivered Class Materials and take reasonable steps to re-send them to Class Members' current addresses; (v) track and timely relay to Counsel for the Parties returned written requests for exclusion from and objections to the Settlement, if any; (vi) track Defendants' deposits of money into the QSF; (vii) issue and mail each Settlement Check; (viii) communicate with Class Members; (ix) monitor the responses to the Class Notice (including tracking Class participation by number of Class Members who opt-out of or

object to the Settlement); and (x) communicate with Class Counsel and Counsel for Defendants about all other matters pertaining to the Settlement.

**2.    Disputes Concerning Claims Administrator**.  All disputes relating to the Settlement Administrator's performance of its duties, after good faith efforts by the Parties to first resolve such disputes, will be referred to Philip Goldstein, Esq., if necessary, who will have continuing jurisdiction over this Settlement until the Court appoints the Settlement Administrator as part of the Preliminary Approval Order.  After entry of the Preliminary Approval Order, disputes concerning or arising out of the Settlement Administrator's performance of duties will be referred to the Court after a good faith effort between the Parties to first resolve such disputes.

## VII.    CAFA NOTICE

Pursuant to CAFA, within ten (10) days after Plaintiffs' filing of the motion for preliminary settlement approval, Defendants, at their own expense, shall mail the CAFA Notices, with their respective exhibits, to the Attorney General of the United States, the Attorney General of the State of New York, and the Attorney General of each other state where Class Members reside according to Defendants' records.  The Parties intend and believe that the CAFA Notice pursuant to the procedures described in this Section comply with the requirements of CAFA.

## VIII.    NOTICE TO THE CLASS OF THE SETTLEMENT AND PROCESS

### 1.    Mailing the Notice Materials to the Class

a.    **Production of Class Members List to Claims Administrator**. Within five (5) days of the Court's entry of the Preliminary Approval Order, Defendants shall provide to the Settlement Administrator a list reflecting each Class Member's employee identification number, social security number, full name, last known mailing address, last known email address, last known emergency contact information, and last known telephone number.  Defendants shall also note in the list whether a Class Member appears more than once under different names, such as, for example, where the same Class Member worked for Defendants under different names.    The Settlement Administrator shall maintain this information confidential and shall use it only to carry out its duties under this Stipulation or as required by order of the Court.

b.    **Dissemination of Class Notice**.  Within thirty (30) days of the Court's entry of the Preliminary Approval Order, the Claims Administrator shall disseminate the Notice Materials in English and Spanish to all Class Members by first-class mail and electronically at their last known mailing and email addresses, unless modified by any updated address information that the Claims Administrator obtains through searches.  The Notice Materials are attached as Exhibits B and C.

c.    **Steps to Disseminate Class Notices**.  The Settlement Administrator will use standard methods, including National Change of Address database searches or the equivalent, to attempt to obtain forwarding addresses prior to mailing the Notice Materials and will take appropriate steps to increase the probability that the Notice Materials will be received by all Class Members.

d.    **Remailing of Class Notices**.   The Claims Administrator shall conduct skip searches on notices returned as undeliverable and remail them within fifty (50) days of the date of the original mailing of the Notice Materials.   The Claims Administrator will not attempt more than two (2) mailings of the Notice Materials to any Class Member.

e.    **Identification of Class Members with Class Counsel**.  The Claims Administrator shall provide to Class Counsel the full names, last known mailing addresses, emails, telephone numbers, and emergency contact information of Class Members whose Notices Materials are returned as undeliverable and for whom the Claims Administrator cannot identify a new mailing address.   Class Counsel may use this information to attempt to locate unreachable Class Members.  Class Members located through the procedures set forth in this Section VIII(1)(e) may participate in this Settlement if they confirm in writing under oath their (i) approximate dates of employment at Live Lion, (ii) name (or names) used while employed at Live Lion, and (iii) rates of pay received.

f.    **Cooperation to Locate Class Members**.  Defendants shall cooperate in good faith with the Settlement Administrator and Class Counsel to locate Class Members whose Class Notices are returned as undeliverable.

2.    **Exclusion from Settlement**

a.    **Procedure**.  Each Class Member will have one hundred (100) days from the date the Claims Administrator mails the Notice Materials to submit a written request for exclusion from the Settlement ("Optout Period").   The written request (the "Optout Statement") must clearly indicate that the Class Member wishes to be excluded from the Settlement and: (1) contain the name, address, and telephone number of the person requesting exclusion; (2) be signed by the Class Member; and (3) mailed to the Claims Administrator by first-class mail and postmarked by not later than the end of the Optout Period.  The Optout Statement will not be valid, and the Class Member will not be excluded from the Class, if it is not timely submitted, if it is not signed by the Class Member, or if it does not contain the name, address, and telephone number of the Class Member.   The date of the postmark on the return mailing envelope on the Optout Statement is the exclusive means used to determine whether the request for exclusion was timely submitted.   Mailing envelopes without a postmark date will be assumed to be postmarked three (3) days before the date the Claims Administrator received them.

b.    **End of Optout Period**.  Within five (5) days of its initial mailing of the Notice Materials, the Claims Administrator shall confirm the date the Optout Period ends by email to Counsel for the Parties.

c.    **Preservation and Sharing of Optout Statements**.  The Claims Administrator shall stamp a postmark or received date, whichever is earlier, on the original of each Optout Statement that it receives and shall serve copies of each Optout Statement on Counsel for all Parties no later than three (3) business days after receipt of it.  The Claims Administrator will, within three (3) days of the end of the Optout Period, send a final list of all Optout Statements to Counsel for the Parties by email.  The Claims Administrator will retain the stamped originals of all Optout Statements and originals of

all envelopes accompanying Optout Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

        d.    **Effect of Optout**.  Class Members who submit valid Optout Statements will be excluded from the Class, will not be entitled to receive a Settlement Share, and will not be bound by the terms of the Settlement or have any right to object, appeal, or comment on it.  Settlement Shares of Class Members who submit valid Optout Statements shall revert into the QSF and be redistributed to the Rule 23 Class Members.

        3.    **Objections to Settlement**

        a.    **Procedure**.  Class Members who wish to present objections to the proposed Settlement at the Fairness Hearing must first do so in writing.  To be considered, such objections must be mailed to the Claims Administrator via First-Class Mail, postage prepaid, and be received by the Claims Administrator by the end of the Optout Period, *i.e.*, within one hundred (100) days of the date the Claims Administrator first mails the Notice Materials.  The statement must include all reasons for the objection, and any reasons not included in the statement will not be considered.  The statement must also include the full name, address, and telephone number(s) for the Class Member making the objection.  The Claims Administrator will stamp the received or postmark date, whichever is earlier, on the original and send copies of each objection to Counsel for the Parties by email no later than three (3) business days after receipt of it.  Class Counsel shall file the date-stamped originals of any and all objections with the Court within three (3) business days after the end of the Optout Period.  A Class Member who does not file and serve a written objection in the manner and by the deadline specified above will be deemed to have waived any objection and will be foreclosed from making any objections to the Settlement (whether by appeal or otherwise).  The postmark date on the mailing envelope enclosing the written objection is the exclusive means used to determine whether the objection was timely submitted.  Mailing envelopes without a postmark date will be assumed to be postmarked three (3) days before the date the Claims Administrator received them.

        b.    **Rights of Objectors**.  An individual who files a valid written objection to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections.  An Objector may withdraw his or her objections at any time.  No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.  A Class Member who has submitted an Optout Statement may not submit objections to the Settlement.

        c.    **Response to Objections**.  The Parties may file with the Court written responses to any filed objection no later than seven (7) days before the Fairness Hearing.

## IX.    RIGHT TO RESCIND

        If more than 15% of the Class Members submits valid and timely Optout Statements, Defendants may declare the Stipulation null and void at any time up to five (5) days after the Claims Administrator issues a final count of the number of valid Optout

Statements received.  Either Party may declare the Stipulation null and void before the Final Approval Order becomes Final if the Court makes a material change to the terms of the Stipulation.  Notwithstanding the foregoing, before exercising their rights to rescind as set forth in this Section, the Parties shall engage in good faith discussions about modifying, salvaging, or renegotiating the Settlement.

## X.      FINAL APPROVAL OF THE SETTLEMENT

Plaintiffs will move the Court for final approval of the Settlement by July 15, 2022, unless the Court orders otherwise.  Plaintiffs will provide a draft of the motion for final settlement approval for Counsel for Defendants' review at least five (5) business days before the filing deadline.  The Parties will submit for entry by the Court, with their motion for final approval, the proposed Final Approval Order attached as Exhibit D.  Any modifications to the proposed Final Approval Order may be made only by mutual agreement of the Parties in writing.

## XI.     ATTORNEYS' FEES AND COSTS, SERVICE AWARDS, AND CLAIMS ADMINISTRATORS' FEES

As part of their motion for final approval, Plaintiffs and Class Counsel may request that the Court grant their requests for:

**1.**      service awards from the QSF totaling $15,000.00, equal to $10,000.00 to Plaintiff Ramon Valencia and $5,000.00 to opt-in Plaintiff Norveli Serrano, for their services to the Class in addition to their respective Settlement Shares.

**2.**      Class Counsel's attorneys' fees and costs from the QSF in an amount not to exceed $116,666.00 in attorneys' fees and an additional amount not to exceed $1,300.00 for reasonable costs and expenses incurred in the prosecution of the Action.

**3.**      Fees payable to the Claims Administrator from the QSF in an amount not to exceed $18,000.00.

**4.**      Defendants shall not oppose the requests in Section XI(1) to XI(3).

## XII.    RESERVE FUND, UNTIMELY, DEFICIENT, OR DISPUTED CLAIMS.

**1.      Reserve Fund**.  The Parties agree that $20,000.00 of the Settlement Payment will be held separately as a temporary emergency fund (the "Reserve Fund") to pay additional Settlement Shares to Class Members who were not identified in Defendants' payroll records but who self-identify and wish to participate in the Settlement (if any such individuals exist) and to pay additional amounts to Class Members who prove through evidence that their Settlement Shares should be increased, as is explained below in this Section XII.  The Reserve Fund will cease to exist fourteen (14) days before the Fairness Hearing, at which time all money remaining in the Reserve Fund will revert to the Net QSF to be redistributed to all Rule 23 Class Members.

**2.      Previously Unidentified Class Members**.  Individuals who contact Class Counsel or the Claims Administrator earlier than fourteen days before the Fairness Hearing claiming to have been improperly excluded from the Class may participate as

Class Members by providing a statement under oath and supporting evidence that they (a) worked at Live Lion as security monitors, (b) were paid on an hourly basis, and (c) worked overtime hours in at least one week or at least one shift longer than ten hours during the Class Period.  Individuals who prove the foregoing will participate in the Settlement as Class Members, and their Settlement Shares will be paid from the Reserve Fund.  Notwithstanding the foregoing, individuals who contact Class Counsel or the Claims Administrator within fourteen days of the Fairness Hearing or later cannot participate in the Settlement.

      **3.**     **Recalculation of Settlement Shares**.  Class Members who contact Class Counsel or the Claims Administrator within the Optout Period claiming that their Settlement Shares were improperly calculated must submit documentary evidence proving that the hours worked by, and wages paid to, them as reflected in Defendants' payroll records are inaccurate.  Class Counsel shall recalculate the Settlement Shares of Class Members who provide such evidence.  If the recalculation results in a higher Settlement Share due to the Class Members, the difference between their previously calculated and newly calculated Settlement Shares will be paid from the Reserve Fund. Notwithstanding the foregoing, Class Members are barred from challenging the calculation of their Settlement Shares after the Optout Period.

      **4.**     **Exhaustion of Reserve Fund**.  In no event shall the acceptance of individuals as new Class Members or changes to Settlement Shares in accordance with this Section result in Defendants being required to pay more than the maximum Settlement Payment of $350,000.00, except that Defendants shall be responsible for paying employer-side payroll taxes, fees associated with establishing the QSF (if any), and the mailing of CAFA notices separately from the Settlement Payment, as set forth in Section XV(3) below.

## XIII.   WAIVER OF RIGHT TO APPEAL

      Provided that the Final Approval Order is consistent with the terms and conditions of this Settlement without material modification, the Parties, their attorneys, and the Rule 23 Class Members waive any and all rights to appeal from the Final Approval Order, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate or set-aside judgment, a motion for new trial, and any extraordinary writ, and the Final Approval Order therefore will become final and non-appealable at the time it is entered.  The foregoing is not a waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

## XIV.   REVERSAL OR MATERIAL MODIFICATION OF JUDGMENT ON APPEAL

      If, after a notice of appeal or a petition for writ of certiorari, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Final Approval Order such that there is a material modification to the Settlement, and that court's decision is not completely reversed and the Final Approval Order is not fully affirmed on review by a higher court, the Class Representatives through Class Counsel and Defendants through Counsel for Defendants will each have the right to void the Settlement, which the voiding Party (or Parties) must do by giving written notice to the other Party (or Parties), the reviewing court, and the Court no later than fourteen (14)

days after the reviewing court's decision vacating, reversing, or materially modifying the Final Approval Order becomes Final.

## XV.   CREATION AND FUNDING OF THE QUALIFIED SETTLEMENT FUND

**1.      Creation of QSF**.  Within ten (10) days of the Court's entry of the Preliminary Approval Order, the Claims Administrator shall establish an interest-bearing escrow bank account, which the Claims Administrator alone shall administer and control, as a "Qualified Settlement Fund" or "QSF" under Section 468B of the IRC and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, *et seq.*

**2.      Funding of QSF**.  Defendants shall deposit the Settlement Payment in equal monthly installments beginning on the first day of the month following twenty (20) days from the Court's entry of the Preliminary Approval Order, and thereafter the first of each month until and including October 1, 2022.  Defendants shall complete depositing the full Settlement Payment (*i.e.*, $350,000.00) by October 1, 2022.  Defendants shall confirm the amount and date of each monthly deposit in writing to Class Counsel and to the Claims Administrator.  Notwithstanding the foregoing, Defendants may deposit greater money amounts into the QSF per month, resulting in a recalculation of the equal monthly installments remaining to be deposited before October 1, 2022.  Furthermore, Defendants may deposit the full $350,000.00 Settlement Payment into the QSF before October 1, 2022, thereby satisfying their monthly deposit obligations under this Section.  By way of example only, and for the sake of clarity, if the Court enters the Preliminary Approval Order on March 4, 2022, Defendants shall deposit $50,000.00 into the QSF on the first of each month from April through October 2022.  By way of further example based on the example provided in the preceding sentence, if Defendants deposited $50,000.00 into the QSF on April 1, 2022, and $100,000 into the QSF on May 1, 2022, they would have $200,000.00 left to deposit by October 1, 2022, with recalculated equal monthly installments of $40,000.00 due by the first of each month from June through October 2022.

**3.      Defendants' Payment Obligations.**   The Settlement Payment is the maximum payment by Defendants or the Released Parties under this Settlement and includes: (1) all Settlement Shares for Rule 23 Class Members; (2) proposed service awards of $5,000.00 for opt-in Plaintiff Norelvi Serrano and $10,000.00 for Plaintiff Ramon Valencia; (3) a $20,000.00 Reserve Fund; (4) Class Counsel approved attorneys' fees and costs; and (5) the Claims Administrator's approved fees and costs.  Notwithstanding the foregoing, Defendants shall pay the following amounts separately from and in addition to the Settlement Payment: (a) fees and/or costs (if any) associated with opening and maintaining the QSF; (b) Defendants' own tax liabilities and/or obligations arising out of payments made under this Settlement, including employer-side payroll taxes; and (c) expenses for mailing of CAFA Notices to appropriate authorities.

**4.      Failure to Fund**.  If Defendants fail to fund the QSF in the timeframe set forth above, the Court will direct the Clerk of Court to enter judgment jointly and severally against all Defendants in the amount of $350,000.00 and Defendants shall reimburse Plaintiffs for all reasonable attorneys' fees and costs incurred in enforcing such judgment.

5. **Interest in QSF**. Funds held in the QSF will accrue interest at the then-current T-bill rate.

## XVI.  DISTRIBUTION OF THE QUALIFIED SETTLEMENT FUND AND TAXES

1. **Net QSF**. The "Net QSF" equals the amount remaining in the QSF after adding the Reserve Fund amount remaining back into the QSF and deducting approved attorneys' fees and costs, approved service awards to Plaintiffs, and approved fees payable to the Claims Administrator.

2. **Class Members' Settlement Checks**. Rule 23 Class Members will receive Settlement Checks from the Claims Administrator in amounts equal to their Settlement Shares. The Claims Administrator shall pay half of each Class Member's Settlement Share under IRS Tax Form W-9, not subject to tax deductions or withholdings, and the remaining half under IRS Tax Form W-4, subject to tax deductions and withholdings. Plaintiffs and Rule 23 Class Members who timely endorse and deposit and/or negotiate their Settlement Checks (the "FLSA Collective Members") are responsible for all federal, state, and local tax liabilities that they may owe from their receipt of their Settlement Shares. Defendants and Class Counsel make no representations with respect to the taxability of any payments to Plaintiffs and Class Members pursuant to this Settlement. The Notice Materials will advise Class Members to seek their own tax advice as necessary, and the Parties agree that each Class Member will have sufficient opportunity to seek such advice after receiving the Notice Materials.

3. **Class Counsel's Fees and Costs**. The Claims Administrator shall issue Class Counsel a check equal to the sum of attorneys' fees and costs awarded by the Court, for which the Claims Administrator will issue an IRS Tax Form 1099 to Class Counsel. Class Counsel is responsible for paying its own federal, state, and local tax liabilities that may result from receipt of such payment.

4. **Claim Administrator's Fees and Costs**. The Claims Administrator shall issue itself a check equal to the sum of fees and costs awarded to it by the Court, subject to IRS Tax Form W-9. The Claims Administrator is responsible for paying its own federal, state, and local tax liabilities that may result from receipt of such payment.

5. **Time for Class Members to Deposit Checks**. Class Members will have one hundred eighty (180) days from the date of the mailing of the Settlement Checks to deposit and/or negotiate them. The Claims Administrator will hold in trust all funds in the QSF throughout this period. Rule 23 Class Members who lose or do not receive their Settlement Checks must request a replacement check within sixty (60) days of the check's initial mailing date. The Claims Administrator shall issue only one (1) such replacement Settlement Check free of charge per Rule 23 Class Member. As of the 181st day after the initial mailing of the Settlement Checks, the Claims Administrator shall close the QSF and return to Defendants all unclaimed funds in it, including interest.

## XVII.  MAILING OF CHECKS AND CONSENT TO JOIN FLSA COLLECTIVE

1. **Payment Date.** The Claims Administrator shall mail the Settlement Checks and distribute its own fees and costs and Class Counsel's attorneys' fees and costs by the

later of October 14, 2022, or forty-five (45) days after the Final Approval Order becomes Final.

      **2.**      **Confirmation of Mailing**.  Seven (7) days before mailing the Settlement Checks, the Claims Administrator shall confirm the mailing date via email to Counsel for the Parties.

      **3.**      **Settlement Checks to Rule 23 Class Members**.  The Claims Administrator will issue all Rule 23 Class Members a Settlement Check from the Net QSF in accordance with the Final Approval Order.

      **4.**      **Consent to Join FLSA Collective Action**.  By signing and depositing their checks, Rule 23 Class Members opt-in to the Action and so become FLSA Collective Members.  All Settlement Checks will contain, on the back of the check, the following limited endorsement:

      **CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

      By endorsing this check, I consent to join the FLSA collective action against Defendants styled *Valencia v. Live Lion Security LLC, et al.*, No. 21 Civ. 448 and release Defendants from all wage-and-hour claims under the Fair Labor Standards Act and the New York Labor Law brought or that could have been brought in the Action, including but not limited to unpaid overtime wages, spread-of-hours pay, and claims for statutory penalties under the Wage Theft Prevention Act.

      _____      Dated:_____
      Signature

      Any modification or amendment of the above language by the Class Member is unacceptable and may, at Defendants' sole discretion, void the Settlement Check.

      **5.**      **Additional Check Language**.  All Settlement Checks will contain, on the front of the check, in capital letters and bold-typeface, the following statement: **"ATTENTION:  ONLY THE RECIPIENT TO WHOM THIS CHECK IS WRITTEN MAY DEPOSIT AND/OR CASH THIS CHECK.   THIS CHECK IS NON-TRANSFERABLE."**  To the extent the Settlement Checks cannot fit the agreed-upon language above, the Parties agree that each Settlement Check may only be deposited and/or cashed by the recipient to whom the Settlement Check is written and will take all reasonable steps to effectuate such intent in the crafting and issuance of the Settlement Checks.

      **6.**      **Provision of Checks Deposited**.  The Claims Administrator shall email Counsel for the Parties copies of all checks that were cashed and/or deposited on two instances: ninety (90) days after the mailing of the Settlement Checks; and again one hundred eighty (180) days after the mailing of the Settlement Checks.

## XVIII. RELEASE OF CLAIMS BY PLAINTIFFS, RULE 23 CLASS MEMBERS, AND FLSA COLLECTIVE MEMBERS

1.      **Class Representatives' Released Claims**:   In consideration of their eligibility for a service award as approved by the Court and their Settlement Share, the Class Representatives, on behalf of themselves and their heirs, executors, and assigns, hereby releases Defendants and all of their past, present, and future parents, subsidiaries, affiliates, successors, and predecessors, including each of their directors, officers, employees, insurers, lawyers, and agents (the "Released Parties"), from all claims, obligations, causes of action, actions, demands, rights, and liabilities of every kind, nature, and description, whether known or unknown, whether anticipated or unanticipated, whether under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law including, without limitation, (1) damages, salaries, wages, compensation, overtime compensation, monetary relief, and any other benefits of any kind, earnings, back pay, unpaid wages, liquidated and statutory damages, penalties, interest, attorneys' fees, and costs, for any claim brought, or that could have been brought, under the FLSA, NYLL, WTPA, and/or any local, state, or federal wage statute, code, or ordinance, including, but not limited to, the claims asserted in the Action; (2) under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Reconstruction Era Civil Rights Act, as amended, 42 U.S.C §§ 1981 *et seq.* ("Civil Rights Act"), the Civil Rights Act of 1991, as amended, 42 U.S.C. §§ 1981a *et seq.* ("CRA of 1991"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), the Equal Pay Act of 1963, the Older Workers' Benefit Protection Act of 1990, the Worker Adjustment and Retraining Notification Act of 1988, the New York State Human Rights Law, the New York Civil Rights Law, the New York State Insurance Law, the New York Labor Law, the New York City Human Rights Law, any of the statutes or common law causes of action of the State of New York or any other state, the New York Constitution, the United States Constitution and/or any and all other federal, state, or local statutes, laws, rules, and regulations pertaining to employment, as well as any and all claims under state contract or tort law, which were or could have been alleged by the Class Representatives against Defendants, accruing through the date of this Agreement; and (3) any and all other claims, charges, actions, and causes of action of any kind or nature that the Class Representatives once had or now have, whether arising out of their employment with Defendants, or otherwise, from the beginning of the world through the date that they sign this Agreement ("Class Representatives' Released Claims").

2.      **Rule 23 Class Members' Released Claims.**  In consideration of his or her receipt of a Settlement Check, each Rule 23 Class Member (including the Class Representatives) releases the Released Parties from all claims, obligations, causes of action, actions, demands, rights, and liabilities of every kind, nature, and description, whether known or unknown, whether anticipated or unanticipated, arising under the NYLL and WTPA that were pled or could have been pled in the Action, including claims for alleged unpaid wages, liquidated damages, statutory damages, pre- and post-judgment interest, attorneys' fees, litigation costs, and equitable relief, that arose within the Class Period (the "Rule 23 Class Members' Released Claims").

15

3.    **FLSA Collective Members' Released Claims**.  In consideration of receipt of the Settlement Share reflected in the Settlement Check sent to and deposited and/or negotiated by him or her, each FLSA Collective Member (including the Class Representatives) releases the Released Parties from any and all claims, obligations, causes of action, actions, demands, rights, and liabilities of every kind, nature, and description, whether known or unknown, whether anticipated or unanticipated, under the FLSA that were pled or could have been pled in the Action, including claims for alleged unpaid overtime wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, litigation costs, and equitable relief, that arose within the period of January 27, 2018, to January 27, 2021 (the "FLSA Collective Members' Released Claims").

## XIX.    FULL COOPERATION

The Parties will fully cooperate with each other and use reasonable efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary or ordered by the Court or otherwise, to accomplish the terms of this Settlement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to obtain preliminary and final approval of this Settlement without material modifications and to implement its terms.

## XX.    NO PRIOR ASSIGNMENTS

Plaintiffs represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any claims, causes of action, demands, rights, and liabilities of every nature and description released under this Settlement.

## XXI.    NOTICES

Unless otherwise specifically provided by this Settlement, all notices, demands, or other communications given under this Settlement will be sent by email and be deemed to have been duly given as of the time it was sent to:

### To Plaintiffs and to the Class:

Louis Pechman, Esq.
Gianfranco J. Cuadra, Esq.
Pechman Law Group PLLC
488 Madison Avenue – 17th Floor
New York, NY 10022
pechman@pechmanlaw.com
cuadra@pechmanlaw.com

### To Defendants:

Chaim B. Book, Esq.
Christopher Neff, Esq.
Moskowitz & Book, LLP
345 Seventh Avenue, 21st Floor

New York, NY 10001
CNeff@mb-llp.com
CBook@mb-llp.com

## XXII.  CONSTRUCTION

This Settlement is the result of lengthy, arm's-length negotiations between the Parties through counsel.  This Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her, or its counsel participated in the drafting of this Stipulation and related documents.

## XXIII. CAPTIONS AND INTERPRETATIONS

Paragraph titles, headings, or captions contained in this Stipulation are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any of its provisions.  Each other term of this Stipulation is contractual and not merely a recital.

## XXIV. MODIFICATION

This Stipulation may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Settlement may not be discharged except by performance in accordance with its terms as approved by the Court or by a writing signed by the Parties.

## XXV.  CIRCULAR 230 DISCLAIMER

Each Party to this Stipulation (for purposes of this section, the "acknowledging party" and each Party to this Stipulation other than the acknowledging party, an "other party") acknowledges and agrees that: (1) no provision of this Stipulation, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department circular 230 (31 CFR part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Stipulation, (b) has not entered into this Stipulation based upon the recommendation of any other Party or any attorney or advisor to any other Party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party, and (3) no attorney or adviser to any other Party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Stipulation.

## XXVI. APPLICABLE LAW

All terms and conditions of this Stipulation and its exhibits are governed by and interpreted according to the laws of the State of New York, without giving effect to any conflict of law or choice of law principles.

## XXVII.   INTEGRATION CLAUSE

This Stipulation, with its attached exhibits, constitutes the entire Stipulation and understanding between the Parties and their respective counsel relating to the Settlement and transactions contemplated by the Settlement. All prior or contemporaneous Stipulations, understandings, representations, and statements, whether oral or written and whether by a Party or a Party's counsel, including mediator proposals, are merged into this Stipulation. No rights under this Stipulation may be waived except in writing.

## XXVIII.   BINDING ON ASSIGNS

This Stipulation will be binding upon and will inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

## XXIX. COUNTERPARTS AND ELECTRONIC SIGNATURES

This Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Stipulation, which will be binding upon and effective as to all Parties, subject to Court approval. This Stipulation may be executed electronically, using applications such as DocuSign and HelloSign, which carry the same force and effect as physical pen and paper signatures.

## XXX.   RULE 23 CLASS MEMBERS BOUND BY SETTLEMENT

Because of the number of Class Members, it is impractical to have each Rule 23 Class Member execute this Stipulation. The Class Notice and subsequent Settlement Checks will inform all Class Members of the binding nature of the releases described above, which shall have the same force and effect as if this Stipulation were executed by each Rule 23 Class Member and FLSA Collective Member.

## XXXI. PARTIES' AUTHORITY TO SIGN AND EXECUTION

The signatories to this Stipulation represent they are fully authorized to enter into this Stipulation on behalf of themselves or their respective principals. The Parties hereby execute below to evidence their acceptance of and agreement to the Stipulation.

**RAMON VALENCIA**

_____
Ramon Valencia, Class Representative

**LIVE LION SECURITY LLC**

By: _____

Title: _____

18

Dated: 01 / 27 / 2022 _____

Dated:_____

**NORELVI SERRANO**

**BENJAMIN MEHREL**

_____
Norelvi Serrano, Class Representative

_____
Benjamin Mehrel

Dated:_____

Dated:_____

**JOSEPH JACOBOWITZ**

_____
Joseph Jacobowitz

Dated:_____

19

Dated:_____

Dated:_____

**NORELVI SERRANO**

**BENJAMIN MEHREL**

_____
Norelvi Serrano, Class Representative

_____
Benjamin Mehrel

Dated:___01 / 27 / 2022_____

Dated:_____

**JOSEPH JACOBOWITZ**

_____
Joseph Jacobowitz

Dated:_____

19