UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
RAMON VALENCIA, on behalf of himself and all    :
others similarly situated,                     :
                                                   :
                Plaintiff,             :
                                                     :
      -against-                  :       **21 Civ. 00448 (PK)**
                                                     :
LIVE LION SECURITY LLC, BENJAMIN MEHREL,   :
and JOSEPH JACOBOWITZ,              :
                                                   :
                Defendants.    :
-------------------------------------------------------------------- X

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

---

PECHMAN LAW GROUP PLLC
Louis Pechman, Esq.
Gianfranco J. Cuadra, Esq.
488 Madison Avenue, 17th Floor
New York, New York 10022
pechman@pechmanlaw.com
cuadra@pechmanlaw.com
Tel.: (212) 583-9500

*Attorneys for Plaintiffs, the Rule 23*
*Class, and the FLSA Collective*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................i-iii

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................1

I.     FACTUAL AND PROCEDURAL BACKGROUND .................................................1

II.    SETTLEMENT AND PRIMARY SETTLEMENT TERMS ........................................2

III.   NOTICE MATERIALS AND THEIR DISSEMINATION ..........................................3

ARGUMENT ...........................................................................................................5

I.     CLASS CERTIFICATION REQUIREMENTS OF RULE 23 ARE MET FOR SETTLEMENT PURPOSES...........................................................................................................5

II.    THE CLASS ACTION SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR ...........5

     A.    The Settlement Is the Result of Arm's Length Negotiations Between Experienced Counsel........................................................................................6

     B.    The Settlement Is Substantively Fair and Reasonable................................7

          1.    Complexity, Cost, and Duration of the Action.................................7

          2.    Reaction of Class to Settlement........................................................8

          3.    Stage of Proceedings and Discovery Completed ................................9

          4.    Liability / Damages and Maintaining Action Through Trial ...........10

          5.    Ability of Defendants to Withstand a Greater Judgment.................11

          6.    Reasonableness of Settlement Fund vs. Possible Recovery.............11

III.   THE NOTICE MATERIALS WERE ADEQUATE AND SATISFIED DUE PROCESS..................12

IV.   THE COURT SHOULD APPROVE THE FLSA COLLECTIVE ACTION SETTLEMENT ...........13

V.    THE PROPOSED SERVICE AWARDS ARE FAIR AND REASONABLE....................................15

VI.   THE PROPOSED CLASS COUNSEL FEES AND COSTS ARE FAIR AND REASONABLE..........16

     A.    Class Counsel's Fees Requested Should Be Granted....................................16

     B.    Class Counsel's Costs Incurred Should Be Reimbursed..............................19

VII.  THE COURT SHOULD APPROVE THE CLAIMS ADMINISTRATOR'S FEES REQUESTED.....................................................................................................20

CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (HBP), 2014 WL 7495092, at *1 (S.D.N.Y. Dec. 29, 2014)................................................................11

*Caballero v. Senior Health Partners, Inc.*, No. 18 Civ. 02380 (CLP), 2018 WL 6435900, at *1 (E.D.N.Y. Dec. 7, 2018) ...........................................................7, 18

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)........................................13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ..............................................7, 11

*Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *1 (S.D.N.Y. May 11, 2010)..............................................................................................15, 16

*Corte v. Fig & Olive Founders LLC*, No. 14 Civ. 7186 (KPF), 2015 WL 12591677, at *1 (S.D.N.Y. June 24, 2015) ............................................................................6

*Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *1 (S.D.N.Y. June 20, 2016) .......................................................................................8

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011)............................19

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 2255394, at *1 (S.D.N.Y. May 7, 2015) .........................................................................................9

*Donnelly v. Peter Luger of Long Island, Inc.*, No. 13 Civ. 1377 (LDW)(ETB), 2014 WL 12769046, at *1 (E.D.N.Y. Nov. 13, 2014).......................................7, 9, 18, 19

*Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *1 (S.D.N.Y. Jan. 29, 2014)..................................................................................9, 10, 18

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .................................................15

*Goldberger v. Integrated Research, Inc.*, 209 F.3d 43 (2d Cir. 2000)....................................17, 18

*Gonqueh v. Leros Point to Point, Inc.*, No. 14 Civ. 5883 (GWG), 2016 WL 791295, at *1 (S.D.N.Y. Feb. 26, 2016) ...........................................................................14, 15

*Granada Investment, Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) .................................10

*Hall v. ProSource Technologies, LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *1 (E.D.N.Y. April 11, 2016) .................................................................................13

*Hernandez v. Anjost Corp.*, No. 11 Civ. 1531, 2013 WL 4145952, at *1 (S.D.N.Y. Aug. 14, 2013) ....................................................................................................7

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 WL 2757792, at *1
(S.D.N.Y. Oct. 24, 2005) ................................................................................................6

*In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....11

*In re Gache*, 164 F.3d 617 (2d Cir. 1998) ..................................................................................11

*In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ...............................17

*In re Telik, Inc. Sec. Litigation*, 576 F. Supp. 2d 570 (2d Cir. 2008) ...............................16, 17

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (2d Cir. 2004) ...............................9

*Karic v Major Automotive Cos.*, 799 F. Supp. 2d 219 (E.D.N.Y. 2011) ...................................13

*Karic v. Major Automotive Cos.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *1
(E.D.N.Y. April 27, 2016) ..................................................................................... passim

*Karic v. Major Automotive Cos.*, No. 9 Civ. 5708, 2015 WL 9433847, at *1
(E.D.N.Y. Dec. 22, 2015). ............................................................................................11

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169 (S.D.N.Y. May 29, 2014) ..................................12

*Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362 (S.D.N.Y. 2013) ..................................8

*Lopez v. Dinex Group, LLC*, No. 155706/2014, 2015 WL 5882842, at *1 (Sup. Ct.,
N.Y. Co. Oct. 6, 2015) ...................................................................................................19

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ...............................5

*McKenna v. Champion International Corp.*, 747 F.2d 1211 (8th Cir. 1984) ...........................13

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ...........................15

*Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597 (D. Colo. 1974) ...........................................10

*Reeves v. La Pecora Bianca, Inc.*, No. 151153/2018, 2020 WL 3104359, at *1 (Sup.
Ct., N.Y. Co. June 11, 2020) ........................................................................................20

*Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (NSR), 2015 WL
12591678, at *1 (S.D.N.Y. Sept. 23, 2015) ....................................................................5

*Sandoval v. Philippe N. Am. Rests., LLC*, No. 16 Civ. 615, 2018 WL 1635034, at *1
(S.D.N.Y. April 4, 2018) ..................................................................................................5

*Savoie v. Merchs. Bank*, 166 F.3d 456 (2d Cir. 1999) ..............................................................17

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *1
(S.D.N.Y. Apr. 16, 2012) ...............................................................................................19

*Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160 (JMA), 2015 WL 10912856, at
  *1 (E.D.N.Y. Sept. 30, 2015)............................................................................... passim

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003)..........................................10

*Surdu v. Madison Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *1
  (S.D.N.Y. Mar. 23, 2018)...................................................................................13

*Torres v. Gristedes Operating Corp.*, No. 08 Civ. 9627, 2010 WL 2572937, at *1
  (S.D.N.Y. June 1, 2010) .......................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ..............5, 6, 16, 17

*Yim v. Carey Limousine NY, Inc.*, No. 14 Civ. 5883 (WFK)(JO), 2016 WL
  1389598, at *1 (E.D.N.Y. April 7, 2016)................................................................6

*Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531, 2014 WL 4816134, at *1
  (S.D.N.Y. Sept. 23, 2014)..........................................................................8, 16, 19

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 2111693, at *1
  (S.D.N.Y. May 12, 2014) .....................................................................................7

<u>Rule</u>

Fed. R. Civ. P. 23 ...........................................................................................................5

## PRELIMINARY STATEMENT

By this Motion, Plaintiff Ramon Valencia and opt-in Plaintiff Norelvi Serrano (together, "Plaintiffs")[1] respectfully request that the Court grant final approval of the Stipulation, which the Court preliminarily approved on February 22, 2022.  ECF No. 24. For the reasons explained below and in the Pechman Affirmation, the Court should approve the settlement as a fair, reasonable, and adequate resolution of bona fide disputes that was reached following arm's length negotiations between experienced attorneys with the assistance of a neutral mediator.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs respectfully refer the Court to their Unopposed Motion for Preliminary Approval and supporting documents, ECF Nos. 19–21, and to the Pechman Affirmation for a full recitation of the factual and procedural history of the Action.  For the Court's convenience, the facts and procedure most relevant to this Motion are summarized here.

## I.    Factual and Procedural Background

On January 27, 2021, Valencia commenced this Action on behalf of himself and all similarly situated security monitors who worked at Live Lion in Brooklyn, New York (the "Class Members").  Pechman Affirm. ¶ 5.  Valencia claimed that Defendants paid Security Monitors at the New York State minimum wage rate, required them to work more than forty hours per workweek, and required them to work daily shifts longer than ten hours. *Id.* ¶¶ 6–7.  He claimed that Defendants paid Class Members on a straight time basis and failed to pay them spread-of-hours pay.  *Id.*  He sought to recover unpaid overtime wages

---

[1]    Unless otherwise defined, capitalized terms and abbreviations used in this Memorandum are defined in the Stipulation, enclosed to the Affirmation of Louis Pechman ("Pechman Affirm.") as Exhibit 1, and in the Pechman Affirmation.  All exhibits to the Pechman Affirmation are referenced here by the prefix "Ex." and a number (*e.g.*, "Ex. 1" is the Stipulation).   Exhibits to the Stipulation are referenced by "Ex." and their designated letter (*e.g.*, "Ex. A" refers to the CAFA Notice).  References to paragraphs in the Pechman Affirmation are written as "Pechman Affirm. ¶ __."

and spread-of-hours pay, liquidated damages, statutory damages for alleged wage notice and statement violations, and attorneys' fees and costs under the FLSA and NYLL. *Id.* ¶¶ 8–9. Opt-in Plaintiff Norelvi Serrano joined this Action on March 15, 2021. *Id.* ¶ 5.

Defendants' Answer of April 23, 2021, generally denied most material allegations in the Complaint, including Plaintiff's WTPA claims and the hours that he alleged working. *Id.* ¶ 11. Defendants also denied the propriety of a class or collective action, claiming many security monitors were not "similarly situated" to Plaintiff. *See id.*

## II.    Settlement and Primary Settlement Terms

Defendants produced approximately 2,150 pages of payroll records for all potential Class Members in June 2021. *Id.* ¶ 17. Relying on the information produced, Class Counsel calculated damages on a class-wide basis and produced the calculations to Counsel for Defendants on August 25, 2021. *Id.* ¶ 19. The Class's highest possible combined damages are $649,692.46, consisting of $43,019.23 in unpaid overtime wages, $34,752 in unpaid spread-of-hours pay, $77,771.23 in NYLL liquidated damages, and $494,150 in WTPA damages. *Id.* On October 19, 2021, with the help of Mediator Philip Goldstein, Esq., the Parties reached a resolution in principle for $350,000. *Id.* ¶ 20. On January 27, 2022, the Parties signed the Stipulation. *Id.* ¶ 27.

The Settlement fully resolves all wage-and-hour claims under the NYLL, FLSA, and WTPA brought or that could have been brought against Defendants on a class and collective action basis. *Id.* ¶ 30. Defendants have deposited monthly $50,000 installments into a bank account (*i.e.*, the QSF) since April 1, 2022, and will finish depositing the full $350,000 Settlement Payment by October 1, 2022. *Id.* ¶ 58. If the Court grants final approval, the Claims Administrator will distribute the Settlement Payment by the later of October 14, 2022, or within seventy-five (75) days of issuance of the Final Approval Order. *See* Ex. 1 §§ II(20) (defining "Final" as thirty days after the Court enters the Final

Approval Order), XVII(1) (calling for the mailing of checks by the later of October 14, 2022, or forty-five (45) days after the Final Approval Order becomes "Final").[2]

If the Settlement is approved, each Class Member will receive 100% of his or her alleged unpaid spread-of-hours pay, overtime wages, and NYLL liquidated damages plus approximately 10.25% of his or her highest possible WTPA damages.  *See* Ex. F at Cols. W, X, Z, AB (reflecting unpaid wages and liquidated damages per Class Member in Column W, WTPA damages in Column X, WTPA share in Column Z, and final settlement shares in Column AB).  This is so even after payment of Class Counsel's requested fees of $116,666 and $1,139.50 in costs incurred prosecuting the Action, service awards of $10,000 to Valencia and $5,000 to Serrano, and $11,264 in administration fees to Rust Consulting.  Pechman Affirm. ¶¶ 34–40.

III.   **Notice Materials and Their Dissemination**

The Court issued the Preliminary Approval Order on February 22, 2022.  *Id.* ¶ 43. Counsel for Defendants provided the Claims Administrator with the contact information and social security numbers of all Class Members, which the Claims Administrator used to obtain updated addresses for all Class Members.  *Id.* ¶¶ 45–46.  Class Counsel translated the Notice Materials into Spanish and provided them to Rust Consulting on March 16, 2022.  *Id.* ¶ 47.  Rust Consulting disseminated the Notice Materials in Spanish and English to all eighty-seven Class Members on March 24, 2022.  *Id.* ¶ 48.

The Class Notice informed all Class Members of: (a) their exact estimated settlement share and how it was calculated (Ex. C § 3); (b) what the Action is about, why it settled, and why they received the Class Notice (*id.* §§ 1–2); (c) the amounts that Class Counsel will request as attorneys' fees and costs, service awards for the Class

---

[2]   By way of example, if the Court grants the Motion at the Fairness Hearing on August 16, 2022, the Settlement payments would be distributed seventy-five days later, on October 30, 2022.

Representatives, and fees for the Claims Administrator (*id.* § 3); (d) the date, time, and location of the Fairness Hearing (*id.* § 8); (e) the taxation and timing of the payment of Settlement Shares (*id.* § 3); (f) that they may contact Class Counsel for more details (*id.* §§ 10–11); (g) and that PLG represents them, but that they have the right to retain another attorney at their own expense (*id.* § 11).

The Class Notice explains three additional points. It informs Class Members of their right to opt out of the Settlement by July 5, 2022. *Id.* § 7. It informs them of their right to object to the settlement if they find it "unfair or inadequate in any respect." *Id.* §§ 7, 9. The Class Notice also states that Class Members will receive a Settlement Check in exchange for giving up their right to sue Defendants for any wage-and-hour claims under the WTPA and NYLL. *Id.* §§ 5–6. Only Class Members who deposit their Settlement Checks release their wage-and-hour claims against Defendants under the FLSA. *Id.* § 6. Class Members will have 180 days from the date of the mailing of checks to cash them. *Id.* § 3. Amounts not cashed by the 181st day from the mailing of the checks will revert back to Defendants along with any other amounts left in the QSF. *Id.*

Each week from April 1 through July 25, 2022, Rust Consulting provided the Parties with weekly updates on its claims administration duties summarizing, *inter alia*, the number of Notice Materials sent and returned as undeliverable, the number of skip traces performed, and the number of Class Members who opted out of or objected to the Settlement. Pechman Affirm. ¶ 59. As of the date of this Motion, Rust Consulting has been unable to deliver Notice Materials to twelve (12) Class Members. *Id.* ¶ 60. No Class Member has objected to or opted out of the Settlement. *Id.* ¶ 61.

**ARGUMENT**

**I.    Class Certification Requirements of Rule 23 Are Met For Settlement Purposes**

Plaintiffs respectfully refer the Court to their unopposed Preliminary Settlement

Approval Motion, which explains in detail that all class action certification requirements

of Rules 23(a) and (b) are met here for settlement purposes. *See generally* ECF No. 21 at

5–12. That Motion further explains why appointment of Plaintiff as Class Representative

and PLG as Class Counsel is proper. *Id.* at 12–13.

**II.    The Class Action Settlement Is Procedurally and Substantively Fair**

Having preliminarily approved the Settlement (ECF No. 24), the Court must now

determine whether it is substantively and procedurally "fair, adequate, and reasonable

and not the product of collusion." *See, e.g.*, Fed. R. Civ. P. 23(e); *Karic v. Major Automotive

Cos.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *4 (E.D.N.Y. April 27, 2016).

Although approval of a class action settlement is subject to the district court's

discretion, the Court must be mindful that "policy favors the settlement and compromise

of class actions." *Karic*, 2016 WL 1745037, at *4; *see also Wal-Mart Stores, Inc. v. Visa U.S.A.

Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072,

1079 (2d Cir. 1995); *Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (NSR),

2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) ("The law favors compromise and

settlement of class actions."). Courts should give "proper deference to the private

consensual decision of the parties." *Torres v. Gristedes Operating Corp.*, No. 08 Civ. 9627,

2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010). The "parties and their counsel are in a

unique position to assess the potential risks of litigation, and thus district courts in

exercising their discretion often give weight to the fact that the parties have chosen to

settle." *Sandoval v. Philippe N. Am. Rests., LLC*, No. 16 Civ. 615, 2018 WL 1635034, at *2

(S.D.N.Y. April 4, 2018). "[W]hen evaluating a settlement agreement, the court is not to

substitute its judgment for that of the Parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'"  *Yim v. Carey Limousine NY, Inc.*, No. 14 Civ. 5883 (WFK)(JO), 2016 WL 1389598, at *6 (E.D.N.Y. April 7, 2016).

Here, the Settlement is procedurally and substantively fair, adequate, reasonable, and the product of arm's-length negotiations between experienced counsel.

## A.      The Settlement Is the Result of Arm's Length Negotiations Between Experienced Counsel

In deciding whether to approve a class settlement, courts assess its fairness by analyzing the negotiations that led to it.  *Wal-Mart Stores, Inc.*, 396 F.3d at 116.  A presumption of fairness attaches to a settlement "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Id.* (internal quotation omitted).  "A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'"  *Corte v. Fig & Olive Founders LLC*, No. 14 Civ. 7186 (KPF), 2015 WL 12591677, at *2 (S.D.N.Y. June 24, 2015) (citation omitted).  Factors relevant to determining whether a settlement is procedurally fair include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) (internal quotation omitted).

Here, the Parties were represented by counsel experienced in wage-and-hour class actions.  Pechman Affirm. ¶¶ 65–77.  They reached a settlement only after Defendants produced approximately 2,150 pages of payroll records, which Class Counsel analyzed to calculate damages for all eighty-seven Class Members.  *Id.* ¶¶ 17–19; Ex. F.  The Parties engaged in extensive and hard-fought arm's length negotiations before and at the mediation.  *See* Pechman Affirm. ¶¶ 20, 26; *see also, e.g.*, Ex. 3 at 2/18/21, 6/2/21, 6/14/21,

8/25/21, 10/19/21, 10/26/21, 10/27/21, 1/18/22, 1/19/22. Following hours of negotiations, the Parties at last reached a settlement in principle with the help of a neutral mediator. Pechman Affirm. ¶ 20; Ex. 3 at 10/19/21; *see also Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 2111693, at *2 (S.D.N.Y. May 12, 2014) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Hernandez v. Anjost Corp.*, No. 11 Civ. 1531, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process.") (internal quotation marks omitted). After, the Parties negotiated a term sheet and went on to negotiate the remaining terms of the Stipulation. Pechman Affirm. ¶ 27.

The Parties' "extensive negotiations on the terms of the agreement," even after reaching a settlement in principle, prove that the settlement is the product of procedural fairness. *See, e.g.*, *Karic*, 2016 WL 1745037, at *5.

**B.    The Settlement Is Substantively Fair and Reasonable**

To determine whether a settlement is substantively fair, reasonable, and adequate, courts in the Second Circuit use the nine-factor test from *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See, e.g.*, *Caballero v. Senior Health Partners, Inc.*, No. 18 Civ. 02380 (CLP), 2018 WL 6435900, at *3 (E.D.N.Y. Dec. 7, 2018); *Karic*, 2016 WL 1745037, at *4; *Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160 (JMA), 2015 WL 10912856, at *4 (E.D.N.Y. Sept. 30, 2015); *Donnelly v. Peter Luger of Long Island, Inc.*, No. 13 Civ. 1377 (LDW)(ETB), 2014 WL 12769046, at *3 (E.D.N.Y. Nov. 13, 2014).

Here, the *Grinnell* factors plainly support settlement approval.

**1.    Complexity, Cost, and Duration of the Action**

The Settlement avoids further litigation, additional discovery (especially depositions), motion practice, trial, and possible appeals, all of which will be significantly

expensive.  As of today, the Action has been pending for almost 1.5 years.  *See* ECF No. 1 (filing date of January 27, 2021).  The Parties have already incurred significant expenses litigating the action.  *See* Pechman Affirm. ¶¶ 79, 82.  This is because "class actions, especially in the context of FLSA claims, are inherently complex."  *Karic*, 2016 WL 1745037, at *5.

If the Action continues, it will take at least another year before class certification and dispositive motions are decided and trial begins, by which time Defendants may lack the resources necessary to pay a judgment.  *See, e.g., also Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531, 2014 WL 4816134, at *4 (S.D.N.Y. Sept. 23, 2014) ("Litigation through trial would be complex, expensive and long.  Therefore, the first *Grinnell* factor weights in favor of final approval.").  The first factor weighs in favor of approval of the Settlement, especially in light of Defendants' financial difficulties.  *See, e.g.*, Pechman Affirm. ¶ 20; *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("In light of defendants' precarious financial condition . . . there is a substantial risk that any judgment plaintiff[] might obtain at trial would prove uncollectable."); *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable.").

### 2. Reaction of Class to Settlement

"The reaction of Class Members to the settlement is the most significant factor in considering the fairness of the Settlement Agreement."  *Karic*, 2016 WL 1745037, at *5. Here, Rust Consulting mailed the Notice Materials on March 24, 2022, which explained to Class Members their rights, including their rights to opt-out of and object to the proposed settlement.  Pechman Affirm. ¶¶ 50, 55; Ex. C at p. 1 (explaining rights to "exclude yourself," "object," "go to a hearing," or "do nothing"), §§ 5, 7, 9.  Class

Members could contact Class Counsel, who is fluent in Spanish and English, to ask for more details about the Settlement. Ex. C § 10; Pechman Affirm. ¶¶ 75, 77.

The Class Members' response to the proposed settlement has been markedly positive, with nobody opting out of or objecting to the Settlement. Pechman Affirm. ¶ 61. "'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness." *Donelly*, 2014 WL 12769046, at *5; *see also Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *5 (S.D.N.Y. Jan. 29, 2014) ("This favorable response demonstrates that the class approves the settlement and supports final approval."); *see also DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 2255394, at *4 (S.D.N.Y. May 7, 2015) (finding the "fact that the vast majority of Class Members neither objected to nor opted out [a]s a strong indication" of fairness).

### 3.   Stage of Proceedings and Discovery Completed

"The proper question is 'whether counsel had an adequate appreciation of the merits of the case before negotiation.'" *Sierra*, 2015 WL 10912856, at *5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (2d Cir. 2004)). Here, Plaintiff's claims rest exclusively on Defendants' documents. *See* Pechman Affirm. ¶¶ 17–19; Ex. F. Defendants produced over 2,000 pages of payroll records for all Class Members. *Id.* ¶ 17. As in *Sierra*, this factor tips decidedly in favor of settlement approval because Class Counsel interviewed Plaintiffs "to gather information relevant to the claims in the litigation, obtained, reviewed, and analyzed documents relating to the employment claims of the Plaintiffs; and analyzed time and payroll records from Plaintiffs and Defendants." *See* 2015 WL 10912856, at *5; Pechman Affirm. ¶¶ 17–19; Ex. F.

The information gathered allowed Class Counsel to understand the merits of the case and calculate damages, down to the penny, for every Class Member. *See* Ex. F. "When discovery has been extensive, and counsel has sufficient information to appreciate

the merits of the case, then settlement is favored." *Karic*, 2016 WL 1745037, at *6 (favoring settlement approval where "thousands of pages of records from defendants" were produced, allowing the parties to "appreciate the merits of the case"); *see also Flores*, 2014 WL 321831, at *5 (finding third *Grinnell* factor weighed in favor of final approval where counsel gathered all information needed to "weigh the strengths and weaknesses of [Class Members'] claims and to accurately estimate the damages at issue").

### 4. Liability/Damages and Maintaining Action Through Trial

Although Plaintiffs believe they have strong claims, there is a risk that a class may not be fully certified. Defendants produced records showing that several employees at Live Lion are not owed wages. *See* Pechman Affirm. ¶ 18. Based on this, Defendants claim a class may not be manageable through trial because there will be individualized inquiries about which employees worked overtime hours or spread-of-hours shifts. Plaintiffs contend that liability and damages are clear (*see, e.g.*, Ex. F).

To avoid the risks inherent in continued litigation, as well as the uncertainty of collective and class action motion practice, the Parties agreed to the Settlement. The possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted). The proposed Settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003). Under these circumstances, especially a "substantial risk of collection" against Defendants, it is proper for the parties "to take the bird in the hand instead of a prospective flock in the bush." *Flores*, 2014 WL 321831, at *5; *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974). The fourth, fifth, and sixth *Grinnell* factors thus support settlement approval.

### 5.    Ability of Defendants to Withstand a Greater Judgment

Defendants have liquidity and other financial issues.  Pechman Affirm. ¶ 20.  As is explained in Section 6 *infra*, the Settlement represents a significant recovery for all Class Members, even after payment of service awards, the Claim Administrator's fee, and Class Counsel's attorneys' fees and costs requested.  *Id.* ¶ 39.  By agreeing to the Settlement, "defendants have committed to fund the settlement amount, eliminating the difficulties and risk of collection in the future."  *Karic v. Major Automotive Cos.*, No. 9 Civ. 5708, 2015 WL 9433847, at *10 (E.D.N.Y. Dec. 22, 2015), *rep. & rec. adopted by* 2016 WL 323673, at *1. The seventh *Grinnell* factor thus weighs in favor of settlement approval.

### 6.    Reasonableness of Settlement Fund vs. Possible Recovery

The final two *Grinnell* factors weigh heavily in favor of settlement approval.  The Settlement Payment represents a significant recovery even though the Class could perhaps recover more money if Plaintiffs were fully successful at trial, through appeals, and judgment collection efforts.  The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000); *see also Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (HBP), 2014 WL 7495092, at *3 (S.D.N.Y. Dec. 29, 2014) ("The inquiry with respect to this factor is to see whether the settlement falls below the lowest point in the range of reasonableness." (quoting *In re Gache*, 164 F.3d 617 (2d Cir. 1998))).  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n. 2.

Here, the Class's highest possible recoveries per category of damages are:

| | |
|---|---|
| Unpaid Overtime Wages (FLSA & NYLL) | $43,019.23 |
| Unpaid Spread-of-Hours Pay (NYLL) | $34,752.00 |

| Liquidated Damages (under NYLL) | $77,771.23 |
| NYLL § 195(1) Damages (WTPA notices) | $174,900.00 |
| NYLL § 195(3) Damages (WTPA paystubs) | $319,250.00 |
| **Total Alleged Damages:** | **$649,692.46** |

Pechman Affirm. ¶ 19; *see also* Ex. F.  This Settlement is a victory for the Class.  Class Members will receive 100% of their unpaid wages and NYLL liquidated damages *even after* payment of fees, costs, and service awards.  Pechman Affirm. ¶¶ 39–40.  To be clear, only the Class's WTPA damages were compromised in this Settlement.  Even so, Class Members will still receive approximately 10.25% of their highest possible WTPA damages.  *Id.* ¶ 40; Ex. F.

The Settlement Payment (*i.e.*, $350,000.00) is a reasonable, fair, and adequate amount because of manageability concerns noted and, most importantly, Defendants' financial and liquidity issues.  *See supra* § II.B.4–5.  The significant recovery achieved represents more than a "meaningful benefit" to the Class Members and should be approved, especially because Courts have approved settlement funds amounting to less than all alleged unpaid wages.  *See, e.g.*, *Karic*, 2016 WL 1745037, at *7; *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. May 29, 2014) ("An award of $315,000 appears fair, reasonable and adequate because even after attorneys' fees, service awards, and administrative costs, plaintiffs would receive *nearly* all of their actual damages.") (emphasis added).  Therefore, the last two *Grinnell* factors favor settlement approval.

## III.   The Notice Materials Were Adequate and Satisfied Due Process

The Claims Administrator sent the Notice Materials in English and Spanish by first class mail to all Class Members.  Pechman Affirm. ¶¶ 47–48.  As the Court found in the Preliminary Approval Order, the Notice Materials were adequate.  ECF No. 24 at 2.  Only twelve (12) Class Members could not be located and so did not receive the Notice

Materials.  Pechman Affirm. ¶ 60; *see also* Ex. 2 ¶ 10.  This was the "best notice practicable under the circumstances."  *Sierra*, 2015 WL 10912856, at *5.

## IV.    The Court Should Approve the FLSA Collective Action Settlement

"A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor."  *Surdu v. Madison Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *6 (S.D.N.Y. Mar. 23, 2018) (citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015)).  If the *Grinnell* factors are met, the standards for settlement approval under the FLSA will "necessarily" also be satisfied.  *Id.*; *see also Hall v. ProSource Techs, LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *9 (E.D.N.Y. April 11, 2016) (approving FLSA collective action settlement after removal of non-disclosure clause).  "The burden [for FLSA settlement approval] is significantly less than that required to sustain a class certification motion under Rule 23 because the FLSA's opt-in provision merely provides an opportunity for potential Plaintiffs to join the action and is only a preliminary determination as to which potential Plaintiffs may in fact be similarly situated."  *Karic v Major Automotive Cos.*, 799 F. Supp. 2d 219, 224 (E.D.N.Y. 2011); *see also McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (reasoning FLSA actions do not implicate due process concerns as do Rule 23 class actions because "[p]arties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").

For the reasons discussed, *supra* Section II, and in the Preliminary Settlement Approval Motion (ECF Nos. 19–21), the FLSA settlement should be approved.  Class Counsel calculated individualized damages for every Class Member.  *See* Ex. F.  As noted, *supra* § II.A., this Settlement was the result of extensive arm's-length negotiations between experienced counsel.  As part of this Settlement, each Class Member will receive his or her full alleged unpaid back wages and liquidated damages.  *See generally* Ex. F.

The Notice Materials informed Class Members in Spanish and English that they had the opportunity to object to or otherwise opt-out of the settlement, attend the Fairness Hearing, and that their FLSA rights will be released only if they cash their checks.  *See generally* Ex. C. §§ 5 (explaining waiver of NYLL claims by doing nothing), 6 ("[Y]ou will not release any claims under the federal law (*i.e.*, the FLSA) unless you become an FLSA Collective Member by negotiating and/or depositing your Settlement check within 180 days of its mailing to you."), 7 (exclusion process), 8 ("You are not required or expected to attend the Fairness Hearing.  However, you are welcome to attend at your own expense."), 9 (explaining objection process), 10 (explaining that more details are available by contacting Class Counsel).  No Class Member has objected to or chosen to be excluded from the Settlement.  Pechman Affirm. ¶ 61.  Class Members who wish to sue Defendants under the FLSA can do so simply by not cashing their checks.  Ex. C § 6; *see also Gonqueh v. Leros Point to Point, Inc.*, No. 14 Civ. 5883 (GWG), 2016 WL 791295, at *4–5 (S.D.N.Y. Feb. 26, 2016) (approving hybrid class settlement where class members waived state law rights by not excluding themselves from class and waived FLSA rights by cashing settlement checks received).

Consistent with *Cheeks*, there are no non-disparagement, confidentiality, or no re-employment provisions in the Stipulation.  *See generally* Ex. 1.  Except for the Class Representatives' releases, all releases in the Action are limited to wage-and-hour claims filed or that could have been filed in the Action.  *See id.* §§ XVIII(2)–(3).  The Class Representatives alone are signing general releases in exchange for their eligibility for service awards.  *Id.* § XVIII(1).  Finally, as is explained below, the attorneys' fees requested here are fair and reasonable.  *See infra* Section VI.

## V.       The Proposed Service Awards Are Fair and Reasonable

Service awards "are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).   Plaintiffs contributed significantly by starting the Action, speaking with Class Counsel, providing their own records to prove their claims, and attending and participating at the mediation.   Pechman Affirm. ¶¶ 85–86.   No Class Member objected to the requested service awards, even though they were listed in the Class Notice and Class Members were informed that they could object to them.   *See* Ex. C §§ 3, 9.

For their services, and especially Valencia's task of shouldering the risk of being the only named plaintiff in the Action, the Court should approve service awards of $10,000 to Valencia and $5,000 to Serrano.   The combined service awards amount to less than 5% of the Settlement Payment and are in line with service awards routinely approved by other courts.   *See, e.g.*, *Karic*, 2016 WL 1745037, at *7–8; *Gonqueh*, 2016 WL 791295, at *3 (approving service awards ranging from $5,000 to $13,000 per plaintiff); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (approving service award of $7,500); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (approving $10,000 service awards as "common in class action cases and . . . important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by coming and continuing as a litigant, and any other burdens sustained by the plaintiff").

**VI.     The Proposed Class Counsel Fees and Costs Are Fair and Reasonable**

**A.     Class Counsel's Fees Requested Should Be Granted**

Per the Stipulation and Class Counsel's retainers with Plaintiffs, Class Counsel requests fees of 33.33% of the QSF, or $116,666.  Ex. 1 § XI(2); Pechman Affirm. ¶¶ 65, 78; *see also Zeltser*, 2014 WL 4816134, at *9 ("Plaintiffs agreed that Class Counsel could apply to the Court for one-third of the class-wide recovery and that they would pay Class Counsel one-third of any individual recovery.").  Class Counsel requests these fees based on the substantial amount of work performed and the significant risk that it undertook in prosecuting the Action purely on a contingency fee basis.  Pechman Affirm. ¶ 65.  If the Action resulted in no recovery, Class Counsel would have recovered no fees and lost its costs incurred.  *See infra* Part VI.B.  To date, Class Counsel has dedicated over 160 hours of attorney time litigating this matter.  Pechman Affirm. ¶ 79; *see generally* Ex. 3.

"The trend in this Circuit is toward the percentage method, which 'directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'"  *See Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see also, e.g.*, *Sierra*, 2015 WL 10912856, at *7 ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recover' method, which is with the 'trend in this Circuit.'" (citation omitted)); *Clark*, 2010 WL 1948198, at *9 (approving "fee award of one-third" of fund as "consistent with the Second Circuit's decision in *Arbor Hill*" and *Goldberger* factors and as appropriate because class counsel would "be required to spend time administering the settlement going forward").  "Attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (2d Cir. 2008) (internal quotation omitted).

The percentage of the fund method "directly aligns the interests of the class and counsel" by incentivizing attorneys to resolve and litigate matters efficiently, for the highest possible settlement amount, without inflating billable hours. *See Wal-Mart Stores, Inc.*, 396 F.3d at 121. It closely "mimics the compensation system actually used by individual clients to compensate their attorneys," *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999), and "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48–29 (2d Cir. 2000) ("[The] primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits."). "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *In re Telik*, 576 F. Supp. 2d at 585. The award of attorneys' fees has the three-fold benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.*

All factors from *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), favor the 33.33% fee requested here. First, Class Counsel spent over 160 hours analyzing over 2,000 pages of records, researching the claims, calculating damages, discussing the claims and defenses with Plaintiffs, communicating with Counsel for Defendants and the Claims Administrator, preparing for and attending the mediation, negotiating the Settlement, drafting the Stipulation and its exhibits, and drafting the motions for preliminary and final approval of the settlement. Pechman Affirm. ¶¶ 5–9, 12, 16–20, 24, 26, 28, 38, 41, 43, 45, 47, 65; *see generally* Ex. 3.

The second and third *Goldberger* factors, the magnitude, complexity, and risk of the litigation, also favor approval of the fees requested.  *See* 209 F.3d at 50.  The Action has been ongoing for almost 1.5 years and involves wage-and-hour issues under the NYLL and FLSA on a complex class and collective action hybrid basis.  *Karic*, 2016 WL 1745037, at *5 ("[C]lass actions, especially in the context of FLSA claims, are inherently complex.").  The Action also involves a dispute as to whether Plaintiffs can pursue their claims on behalf of all Live Lion employees.

The fourth *Goldberger* factor, the quality of the representation, favors approval of the fees requested.  209 F.3d at 50.  Class Counsel is experienced in litigating wage-and-hour class actions.  Pechman Affirm. ¶¶ 66–77.  The results here speak for themselves: even after fees, costs, and service awards, Class Members will receive *over two times* their highest possible unpaid wages.  *See* Ex. F.  In view of this significant recovery, the fee requested in relation to the Settlement Payment (the fifth *Goldberger* factor) is reasonable and consistent with fees regularly awarded by courts in this circuit.  *See, e.g.*, *Karic*, 2016 WL 1745037, at *8 ("Courts in this Circuit often approve requests for attorneys' fees amounting to 33.3% of a settlement fund."); *Sierra*, 2015 WL 10912856, at *7 (same).

Public policy favors approving the fees requested, the sixth *Goldberger* factor.  *See, e.g.*, *Caballero*, 2018 WL 6435900, at *6 ("[T]he public policy goal of providing an incentive for lawyers to take on complicated actions that assisted vulnerable communities is furthered by the attorneys' fee award in this case."); *Donnelly*, 2014 WL 12769046, at *7 ("[P]ublic policy favors a common fund attorneys' fee award in wage and hour class action lawsuits."); *Flores*, 2014 WL 321831, at *8 (same).  This is because the "FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights."  *Flores*, 2014 WL 321831, at *8.  In FLSA and NYLL actions, attorneys take on the role of "private attorneys

18

general" who must be "adequately compensated for their efforts." *Zeltser*, 2014 WL 4816134, at *8

Based on the significant amount of work performed, Class Counsel's lodestar to date is slightly over $70,000, equal to approximately 60.32% of the percentage of the fund requested as fees. Pechman Affirm. ¶¶ 79–80; Ex. 3. A lodestar cross-check in this Action results in a multiplier of 1.6580, amply justifying the fees requested. *See, e.g.*, *Donnelly*, 2014 WL 12769046, at *8 ("Courts regularly award lodestar multipliers between two to six times [the] lodestar," and awarding fees based on a 2.35 times lodestar multiplier "at the lower range of what courts have approved"); *Lopez v. Dinex Grp., LLC*, No. 155706/2014, 2015 WL 5882842, at *7 (Sup. Ct., N.Y. Co. Oct. 6, 2015) (granting 3.15 multiplier as "fair and reasonable" and collecting cases accepting multipliers of 3.5 to 7.6).

Notably, the Class Notice states that Class Counsel would request $116,666 in fees and up to $1,300 in costs. *See* Ex. C § 3. Class Members had the right to object to the Settlement either personally or through their attorney if they found that it was "unfair or inadequate *in any respect*," including Class Counsel's fees and costs requested. *See id.* § 9 (emphasis added). That no Class Member objected to the fees and costs requested "lend[s] support for [their] approval." *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011) ("If the Class Members themselves do not object, then, that is some indication that the agreed-upon fee is not unreasonable.").

### B.     Class Counsel's Costs Incurred Should Be Reimbursed

"Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Donelly*, 2014 WL 12769046, at *9; *see also Karic*, 2016 WL 1745037, at *9. Here, Class Counsel requests reimbursement of $1,139.50 for costs incurred prosecuting this Action, less than the potential $1,300 Class Members were notified of in their Notice

Materials.  *See* Ex. C § 3; *Karic*, 2016 WL 1745037, at *9.  Costs incurred are $402 for the Court's filing fee, $300 for the mediator's initial fee, and $437.50 the mediator's remaining mediation fee.  Pechman Affirm. ¶ 82.  These costs are reasonable and were necessarily incurred to achieve the significant result embodied in the Settlement.

## VII.   The Court Should Approve the Claims Administrator's Fees Requested

The Court should approve $11,264 in fees payable to Rust Consulting, Inc., a highly experienced settlement administrator, for its services performed and yet to be performed administering the Settlement of this Action.  Pechman Affirm. ¶ 88; *see also, e.g.*, https://www.rustconsulting.com/about (last visited, July 26, 2022); Ex. 2 ¶¶ 1–2. The amount requested is reasonable and less than the $18,000 estimate reflected in the Notice Materials, to which no Class Member objected.  *See* Ex. C §§ 3, 9; *see also, e.g.*, *Reeves v. La Pecora Bianca, Inc.*, No. 151153/2018, 2020 WL 3104359, at *7 (Sup. Ct., N.Y. Co. June 11, 2020) (approving Rust Consulting's fees of $22,000).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion in its entirety and enter the proposed Final Approval Order (Ex. D).

Dated: New York, New York
     August 5, 2022

PECHMAN LAW GROUP PLLC


By:    *s/ Louis Pechman*          
          Louis Pechman, Esq.
          Gianfranco J. Cuadra, Esq.
          488 Madison Avenue, 17th Floor
          New York, NY  10022
          pechman@pechmanlaw.com
          cuadra@pechmanlaw.com
          Tel.: (212) 583-9500
          *Attorneys for Plaintiffs, the Rule 23 Class, and the FLSA Collective*